IBP, INC., Appellant,

v.

Howard HARKER, Appellee.

No. 99–1708.

Supreme Court of Iowa.

Sept. 6, 2001.

James C. Meehan, Dakota City, NE, for appellant.

Al Sturgeon, Sioux City, for appellee.

TERNUS, Justice.

Iowa's workers' compensation statute requires an employer to reimburse an employee for the costs of an independent medical examination (IME) when "an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low." Iowa Code § 85.39 (1997). In this case, the industrial commissioner ruled that the employer was required to pay for its employee's IME, even though the employee, not the employer, chose the treating physicians who had rendered disability ratings that the employee thought were too low. The district court affirmed the industrial commissioner's ruling on judicial review. The employer has appealed. We reverse and remand.

### I. Background Facts and Proceedings.

The pertinent facts are essentially undisputed. The appellee, Howard Harker, is an Iowa resident employed as a truck driver by appellant, IBP, inc. On February 6, 1997, Harker was injured in a fall at IBP's West Point, Nebraska plant. When Harker presented himself to IBP's health services department, he was advised that under Nebraska law he was allowed to choose his own physician for treatment of his injuries. *See* Neb.Rev.Stat. § 48–120 (1997). Harker decided to seek treatment from Dr. Merle Muller, to whom he had previously been sent by IPB for an employment physical. The parties agree that Harker chose Dr. Muller and IBP acquiesced in this choice.

Dr. Muller referred Harker to an orthopedist, Dr. Raymond Sherman. Dr. Sherman, in turn, referred Harker to Dr. Leonel Herrera, a neurologist. Over a period of months, Harker saw Dr. Sherman and Dr. Herrera for treatment and rehabilitation. By the end of the summer, both doctors released Harker from their care, stating that he had suffered no permanent impairment as a result of his fall.

Harker then filed a petition with the Iowa industrial commissioner, asking for an IME at IBP's expense pursuant to section 85.39. IBP resisted, arguing that it had not retained the physicians who had rendered the permanent disability evaluations that were not to Harker's liking. A deputy industrial commissioner denied Harker's application, concluding that Harker had already "had an impairment evaluation by his own doctor."

Harker appealed the deputy's ruling to the industrial commissioner. The commissioner noted that, although Harker chose his treating physicians, IBP "acquiesced in claimant's choice of physician[s]" and paid for their services. The commissioner concluded that Dr. Sherman and Dr. Herrera were "physicians retained by the employer in fulfilling its obligation to provide claimant with medical care," and, therefore, IBP was obligated to pay for an IME.

IBP sought judicial review of the commissioner's decision. The district court upheld the commissioner's ruling, holding that "IBP chose Dr. Mueller [sic] as Harker's employer-retained physician when it acquiesced to his course of medical treatment." IBP has now appealed to this court.

### II. Scope of Review.

■ The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs our review. *See Pirelli–Armstrong Tire Co. v. Reynolds,* 562 N.W.2d 433, 436 (Iowa 1997). Section 17A.19 permits a reviewing court to reverse an agency decision when it is "[i]n violation of constitutional or statutory provisions," or when it is "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8). This court applies the standards of section 17A.19(8) to the agency's actions to determine whether our legal conclusions are the same as those reached by the district court. *See Ewing v. Allied Constr. Servs.,* 592 N.W.2d 689, 691 (Iowa 1999). If our conclusions are the same, we affirm; if they are not, we reverse. *See id.*

### III. Issues on Appeal and Governing Legal Principles.

This case requires the court to interpret the meaning of "retained by the employer" in Iowa Code section 85.39. Based on our interpretation of this language, we must then consider whether there is substantial evidence in the record to support the industrial commissioner's determination

that, pursuant to section 85.39, Harker is entitled to an IME at IPB's expense.

■ "In reviewing the commissioner's interpretation of the statutes governing the agency, we defer to the expertise of the agency, but reserve for ourselves the final interpretation of the law." *Second Injury Fund v. Bergeson*, 526 N.W.2d 543, 546 (Iowa 1995); *accord Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 256 (Iowa 1995) ("The proper interpretation of the workers' compensation statute is a question of law for this court."). Well-established rules govern our interpretation of statutes:

> When interpreting a statute, our ultimate goal is to ascertain and give effect to the intention of the legislature. We seek a reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result. We consider all portions of the statute together, without attributing undue importance to any single or isolated portion.

*John Deere Dubuque Works v. Weyant*, 442 N.W.2d 101, 104 (Iowa 1989) (citations omitted).

■ "To ascertain legislative intent, we look to what the legislature said. We do not speculate as to the probable legislative intent apart from the words used in the statute." *State v. Adams*, 554 N.W.2d 686, 689 (Iowa 1996). "Absent legislative definition or a particular and appropriate meaning in law, we give words their plain and ordinary meaning." *State v. Ahitow*, 544 N.W.2d 270, 272 (Iowa 1996). The court applies the rules of statutory construction *only* when the terms of the statute are ambiguous. *See William C. Mitchell, Ltd. v. Brown*, 576 N.W.2d 342, 347 (Iowa 1998).

A statute is ambiguous if reasonable persons could disagree as to its meaning. "Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined."

*Id.* (quoting *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995)). In those cases where ambiguity is found,

> "[t]o resolve ambiguity and ultimately determine legislative intent [the court] consider[s] (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it."

*Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 211 (Iowa 2001) (quoting *State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991)). "[A] statute should be accorded a logical, sensible construction which gives harmonious meaning to related sections and accomplishes the legislative purpose." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980).

■ "The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *Id.* Thus, the court "liberally construe[s] workers' compensation statutes in favor of the worker." *Ewing*, 592 N.W.2d at 691.

## IV. *Discussion.*

For purposes of this case, two provisions of Iowa's workers' compensation law have particular importance: Iowa Code section 85.27 and Iowa Code section 85.39. Section 85.27 provides that with respect to injuries compensable under chapter 85, *"the employer* is obligated to furnish reasonable services and supplies to treat an injured employee, and *has the right to choose the care."* Iowa Code § 85.27 (em-

phasis added). Section 85.39 states in pertinent part:

> After an injury, the employee, *if requested by the employer*, shall submit for examination at some reasonable time and place and as often as reasonably requested, to a physician or physicians authorized to practice under the laws of this state or another state, without cost to the employee; but if the employee requests, the employee, at the employee's own cost, is entitled to have a physician or physicians *of the employee's own selection* present to participate in the examination....
>
> If an evaluation of permanent disability has been made by a physician *retained by the employer* and the employee believes this evaluation to be too low, the employee shall, upon application to the commissioner and upon delivery of a copy of the application to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for a subsequent examination by a physician *of the employee's own choice*, and reasonably necessary transportation expenses incurred for the examination....

*Id.* § 85.39 (emphasis added).

Here, the employee sought to compel the employer to pay for an IME under section 85.39. The only dispute with respect to the application of this statute is whether the physicians giving the "low" disability evaluations were "retained by the employer" within the meaning of the statute. Under the undisputed facts in this case, the answer to this question depends on whether a physician chosen by the employee, but paid by the employer, is "retained by the employer" for purposes of obligating the employer to pay for an IME by a physician of the employee's choosing.

The legislature did not define the term "retained." In the decision appealed here and in prior rulings of the industrial commissioner, the commissioner has interpreted the phrase "retained by the employer" to mean "paid for by the employer." This interpretation is consistent with the common definition of the word "retain," which is "to keep in pay or in one's service." *Webster's Third New International Dictionary* 1983 (unabr. ed.1993). As this definition shows, however, "retain" does not necessarily mean "pay for"; it may also mean "in one's service." *Webster's* defines "service" as "professional or other useful ministrations." *Id.* at 2075. "Ministration" is defined as "the action of giving aid, service, or comfort." *Id.* at 1439. Certainly a physician *chosen by an employee* to treat the *employee's* injuries could be considered to be in the *employee's* service. Because there are two alternative definitions of "retain," either one of which arguably applies here, we think the statute is ambiguous. Therefore, we turn to rules of statutory construction.

 As mentioned previously, in interpreting statutes, we attempt to give effect to legislative intent; we look to all portions of the statute to discern that intent. Once we understand the purpose of the statute, we adopt a meaning, consistent with the language employed by the legislature, that will effectuate that purpose.

The statutes quoted above—sections 85.27 and 85.39—evidence a legislative attempt to balance the interests of the injured employee and the employer. A noted treatise in the area of workers' compensation law has described these competing interests with respect to the choice of medical treatment:

> The perennial controversy on the "choice of doctor" question is the result of the necessity of balancing two desirable values. The first is the value of allowing an employee, as far as possible, to choose his own doctor. This value

stems from the confidential nature of the doctor-patient relation, from the desirability of the patient's trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury.

5 Arthur Larson, *Larson's Workers' Compensation Law* § 94.02(2), at 94–13 (2001) (footnotes omitted).

Under the Iowa statute, the employer is given the right to choose who will provide treatment for an employee's injury. *See* Iowa Code § 85.27. In addition, the employer is allowed to subject the employee to reasonable medical examinations by other physicians, presumably of the employer's choosing. *See id.* § 85.39. The quid pro quo for these employer rights is the right of the employee to have a physician of his choosing present at any IME conducted at the employer's request and to have an IME conducted by a doctor of his own choice if the physician retained by the employer has given a disability rating unacceptable to the employee. *See id.* In an apparent attempt to equalize the generally unequal financial positions of the parties, the legislature has said that the employer must pay for the employee's IME under the latter circumstances. *See id.*

■ We conclude that when the statute is considered in its entirety, it is apparent that the legislature intended to balance the competing interests of the employee and employer with respect to the *choice* of doctor. We think, therefore, that the legislature meant to allow the employee to obtain a disability rating from a physician of his "own choice" when the physician *chosen by* the employer gives a

disability evaluation unsatisfactory to the employee.[1] Accordingly, the industrial commissioner and the district court erred in interpreting the language "retained by the employer" to mean "paid by the employer."

■ We now consider whether there is substantial evidence to support the commissioner's finding that Dr. Sherman and Dr. Herrera were "retained by" IBP. There is no dispute here that these physicians were chosen by Harker. Therefore, under a correct interpretation of section 85.39, these physicians were not "retained by the employer." There is not substantial evidence in the record to support the commissioner's contrary finding.

### V. *Conclusion and Disposition.*

We hold that IBP had no obligation under section 85.39 to pay for an IME by a physician selected by Harker because Harker had already obtained, at IBP's expense, impairment ratings from two physicians that he had chosen. The industrial commissioner erred in her application of the statute to the facts of this case. Therefore, we reverse the decision of the district court affirming the commissioner's ruling, and remand for further proceedings consistent with this opinion.

### REVERSED AND REMANDED.

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

1. Although at first blush our decision may seem inconsistent with the principle that workers' compensation statutes are construed in favor of the worker, we think our interpretation of section 85.39 is most consistent with the entire statutory scheme developed by the legislature. In addition, our decision will encourage employers to acquiesce in an employee's choice of treating physician, a result that

advances the employee's interest in choosing his own doctor.

* Senior Judge assigned by order pursuant to Iowa Code section 602 .9206 (2001).