# IN THE SUPREME COURT OF IOWA

No. 50 / 06-0565

Filed August 3, 2007

**STATE OF IOWA,**

Appellant,

vs.

**JEFFREY LEWIS SPENCER,**

Appellee.

_____

Appeal from the Iowa District Court for Marshall County, Carl D. Baker, Judge.

The State requests discretionary review of a district court ruling granting the defendant's motion to suppress tape-recorded evidence. **REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Jennifer Miller, County Attorney, and Paul G. Crawford, Assistant County Attorney, for appellant.

Brandon Brown of Parrish, Kruidenier, Moss, Dunn, Boles, Gribble, and Cook, L.L.P., Des Moines, for appellee.

**WIGGINS, Justice.**

The State requests discretionary review of a district court order suppressing tape recordings of conversations allegedly containing evidence of sexual abuse between the defendant and his alleged minor victim. The minor's father made the recordings without the prior consent of either the minor or the defendant. The district court found because there was no prior consent to record, the recordings violated Iowa Code chapter 808B (2005). Because we interpret section 808B.2(2)(*c*) to allow a parent to consent to the recording of conversations between his minor child and the defendant under the vicarious consent doctrine, we reverse the district court order and remand the case for further proceedings.

## I. Background Facts and Proceedings.

Jeffrey Spencer was a teacher at Lenihan School. Lenihan School houses a specialized program for students with behavioral and scholastic problems. A.T. transferred to Lenihan about six weeks before the end of the 2005 school year. Spencer taught A.T. in the specialized program. At the time, A.T. was thirteen years old and in the eighth grade. Spencer was forty-two years old.

A.T. lived with her father, Arnold Thompson. During the summer of 2005, Thompson became suspicious of A.T.'s relationship with Spencer. Thompson based this suspicion on what he described as "a bunch of little things." For example after school was out, Thompson picked up his home telephone while A.T. was placing a call and heard "a man's voice on a voice recorder." Thompson did not recognize the voice. Suspicious, he asked A.T. whose voice he heard over the phone. She informed him it was Spencer's voice. Thompson asked A.T. why she was calling Spencer. A.T. explained she was checking on some grades. Thompson reminded A.T. her grades

had already been released a week before. Thompson became even more suspicious of the phone call after observing A.T. with her two friends. After questioning A.T. about the phone call, Thompson testified her two friends "piped in" and added, "Mr. Spencer's really cool and so on and so forth." Thompson told A.T. not to contact Spencer while school was out.

A.T. and her friends left Thompson's home. Shortly thereafter Thompson received a phone call from one of the friend's mother. The mother informed Thompson she overheard the three girls talking about Spencer and A.T. The mother told Thompson that his suspicions were true.

During the last week in June Thompson was unexpectedly at home. At about ten in the morning the phone rang, Thompson answered, and found Spencer on the other end. Spencer asked Thompson if he could speak with A.T. Thompson thought that Spencer "sounded a little surprised" after Thompson answered the phone instead of A.T. Thompson also noted the number Spencer called from that morning appeared on his caller identification for "a few weeks here and there."

Thompson's suspicions were also raised when he discovered Spencer took A.T. on a second swimming field trip to a lake after the school year ended. Finally, Thompson's suspicions of Spencer were heightened because, although unconfirmed, he heard rumors that Spencer had been sexually involved with a fifteen- or sixteen-year-old girl.

On June 14, 2005, Thompson reported his concerns to the Marshalltown police. Thompson advised the police of his fears and that "he planned to further investigate by placing a recorder on his telephone."

Thompson testified he began recording his home telephone on either June 29 or 30. He never told his daughter or Spencer that he was recording the phone calls. However, A.T. knew Thompson had a recorder and

previously asked her father if he had been recording her telephone conversations. At that time, Thompson was not recording the telephone conversations and told A.T. as much.

On July 6 Thompson called the Marshalltown police and informed the police he had recorded several phone conversations between Spencer and A.T. that contained inappropriate content of a sexual nature. Out of concern for the legality of the recordings, the police did not listen to the recordings, but instead had Thompson inform an officer of the tapes' content.

An investigation took place, and on September 29, Spencer was charged with sexual exploitation by a school employee in violation of Iowa Code sections 709.15(1)(*f*), (*g*) and 709.15(3)(*a*); indecent contact with a child in violation of section 709.12(1) or (2); and lascivious contact with a minor in violation of section 709.14.

Spencer pled not guilty to all three charges. Claiming Thompson's recordings violated Iowa Code chapter 808B because neither Spencer nor A.T. gave prior consent to record, Spencer filed a motion to suppress the tape recordings of the conversations between himself and A.T. The State resisted and urged the district court to interpret the statute to include the vicarious consent doctrine and find Thompson can and did vicariously consent on behalf of his daughter, A.T., to the recording.

After finding the vicarious consent doctrine had not previously been applied in Iowa and declining to adopt the doctrine itself, the district court granted Spencer's motion to suppress. The district court prohibited admission of the recordings of the conversations between A.T. and Spencer and any testimony pertaining to these recordings.

The State applied for discretionary review. We granted the State's application and stayed the district court proceedings until the resolution of this issue.

## II. Issue and Scope of Review.

The sole issue in this case is whether chapter 808B bars the admission of Thompson's recordings of the telephone conversations between A.T. and Spencer. Therefore, because this issue is one of statutory interpretation, the standard of review is for correction of errors at law. *State v. Hornik*, 672 N.W.2d 836, 838 (Iowa 2003).

## III. Analysis.

A person violates the Iowa interception of communications act by willfully intercepting oral communications that are not otherwise exempt from or subject to an exception contained in chapter 808B. Iowa Code § 808B.2. If an interception is in violation of chapter 808B, the evidence is barred from any court proceeding. *Id.* § 808B.7.

The State claims the recordings of the telephone conversations do not violate chapter 808B because Thompson meets the consent exception contained in the chapter. The State argues the statute allows Thompson, as guardian to minor A.T., to vicariously consent on behalf of A.T. to record the telephone conversations between A.T. and Spencer.

Under section 808B.2(2)(*c*) when a party to a communication not acting under color of law gives consent to intercept that communication, the recording does not violate the act. *Id.* § 808B.2(2)(*c*). This consent exception is inapplicable if the interception is for the purposes of committing a criminal, tortious, or other injurious act. *Id.* The full text of this consent exception states:

> It is not unlawful under this chapter for a person not acting
> under color of law to intercept a wire, oral, or electronic

communication if the person is a party to the communication or if one of the parties to the communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state or for the purpose of committing any other injurious act.

*Id.*

If prior consent is obtained, the contents of the communication and any derivative evidence may be admitted "in a criminal proceeding in any court of the United States or of this state or in any federal or state grand jury proceeding." *Id.* § 808B.4(3). Therefore, in order to decide whether the district court correctly barred the recordings from evidence, we must determine whether the provisions of chapter 808B allow Thompson to vicariously consent to the recording of conversations between A.T. and Spencer.

Currently, chapter 808B does not specifically provide for a parent or guardian to consent to the interception of his or her minor child's communications. *Compare id.* § 808B.2(2)(*c*), *with* Ga. Code Ann. § 16-11-66(d) (allowing a parent or guardian of a child under eighteen years of age, with or without the consent of such minor child, to intercept the child's communications in the family home for the purpose of ensuring the welfare of such minor child). Spencer argues because there is no explicit statutory provision creating a vicarious consent exception and the Iowa legislature included two consent exceptions and an operator exception, "it is presumed and inferred that [the legislature] intended to exclude all other exceptions." However, the issue is not whether the legislature meant to adopt *another* exception to chapter 808B, instead this court is determining whether the present consent exception is satisfied when the consent of a minor party to the conversation is given by that minor's parent or guardian.

Before engaging in statutory construction, we must first determine whether the statute is ambiguous. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). A statute is ambiguous "if reasonable persons could disagree as to its meaning." *Id.* (citation omitted). "Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined." *Id.* (citations and internal quotation omitted).

"Consent" is defined as "capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action." *Webster's Third New International Dictionary* 482 (unabr. ed. 2002). Under this definition, a valid consent requires the person giving consent to have the requisite physical and mental ability to do so. In other words, to consent to something requires more than just giving permission.

Under the laws of this state, the legislature has frequently examined the concept of consent when applied to minors. We find the legislature has not applied this concept consistently. For example, the legislature has enacted several statutes prohibiting a minor from consenting to certain acts. A minor cannot consent to having sex until the minor is fourteen and only then in limited circumstances as provided by law. Iowa Code ch. 709. For a minor under the age of fourteen, both parents are required to consent in writing to the minor child's name change. *Id.* § 674.6. The legislature does not allow a minor to consent to an abortion procedure without parental notification or compliance with a judicial bypass procedure. *Id.* § 135L.3. A minor cannot obtain a driver's license without the consent of a parent or guardian. *Id.* § 321.180B. The legislature also prohibits a minor from marrying without the consent of a parent or compliance with a judicial

bypass procedure if the minor is sixteen or seventeen years old. *Id.* § 595.2(2)-(5).

On the other hand, the legislature has provided minors the right to consent in a few instances. For example, minors are bound by all contracts, unless the minor disaffirms the contract as provided by law. *Id.* § 599.2. A minor can maintain a deposit account with a state bank without the consent of a parent, guardian, or conservator and with the same effect as though the minor were an adult. *Id.* § 524.805(5).

These statutes illustrate that in order to account for a minor's vulnerability and a minor's inability to make sound judgments about certain conduct, Iowa's legislative policy ordinarily requires a parent's or guardian's input. With this in mind, we find the definition of the word "consent" as used in section 808B.2(2)(*c*) is ambiguous when applied to minors.

To resolve this ambiguity this court must determine the legislative intent behind the statute. *IBP, Inc.*, 633 N.W.2d at 325.

> We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (internal citations omitted). This court avoids interpreting a statute in such a way that leads portions of it to be redundant or irrelevant. *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006). Instead, we look at a statute in its entirety. *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006). In interpreting

a statute this court looks for "an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results." *Id.*

The vicarious consent doctrine allows for a parent or guardian, under certain circumstances, to give consent in lieu of the minor's consent to legally intercept that minor's communications. The vicarious consent doctrine is an issue of first impression for this court. Furthermore, the Iowa legislative history lacks any commentary on the purpose or intent of the legislature with regard to the issue in this case.

However, Iowa's interception of communications act contains nearly identical language to that of the federal wire and electronic communications interception and interception of oral communications act ("federal interception of communications act"). In 1968 Congress enacted the federal interception of communications act. Pub. L. No. 90-351, § 802, 82 Stat. 212 (codified as amended at 18 U.S.C. §§ 2510-21 (1968)). The Iowa legislature enacted its interception of communications act in 1989. 1989 Iowa Acts ch. 225, §§ 22-29. Therefore, we can look to the federal act and the interpretations placed on the consent provision by the federal courts and assume the Iowa legislature had the same objectives in mind and employed the statutory terms in the same sense as its federal counterparts. *City of Davenport v. Pub. Employment Relations Bd.*, 264 N.W.2d 307, 313 (Iowa 1978). However, the federal court decisions construing the federal statute are neither conclusive nor compulsory. *Id.* These federal decisions are merely illuminating and instructive on the meaning of our statute. *Id.*

The federal interception of communications act contains a consent exception that nearly mirrors the language of the consent exception in the Iowa interception of communications act. The federal exception states:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic

communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

The federal courts have interpreted this consent exception in the federal act to allow a minor's parent or guardian to provide that minor's prior consent to intercept a wire, oral, or electronic communication of that minor. This exception has been stated as follows:

> [A]s long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording.

*Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998); *accord Wagner v. Wagner*, 64 F. Supp. 2d 895, 896 (D. Minn. 1999) ("adopt[ing] the vicarious consent doctrine, finding that as long as the guardian has a good faith, objectively reasonable belief that the interception of telephone conversations is necessary for the best interests of the children in his or her custody, the guardian may vicariously consent to the interception on behalf of the children"); *Campbell v. Price*, 2 F. Supp. 2d 1186, 1191 (E.D. Ark. 1998) (finding "defendant's good faith concern for his minor child's best interests, may, without liability under [the federal interception of communications act], empower the parent to intercept the child's conversations with her non-custodial parent"); *Thompson v. Dulaney*, 838 F. Supp. 1535, 1544 (D. Utah 1993) (stating "as long as the guardian has a good faith basis that it is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of phone conversations, vicarious

consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children").

The *Pollock* court stressed the vicarious consent doctrine is not a per se rule approving of vicarious consent in all circumstances, but rather "a clear emphasis is put on the need for the 'consenting' parent to demonstrate a good faith, objectively reasonable basis for believing such consent was necessary for the welfare of the child." *Pollock*, 154 F.3d at 610. The test creates some important limitations on the ability of a parent or guardian to vicariously consent to the recording of his or her minor child's conversations. As the *Pollock* court explained:

> We stress that while this doctrine should not be interpreted as permitting parents to tape any conversation involving their child simply by invoking the magic words: "I was doing it in his/her best interest," there are situations, such as verbal, emotional, or sexual abuse by the other parent, that make such a doctrine necessary to protect the child from harm. It is clear that this is especially true in the case of children who are very young. It would be problematic, however, for the Court to attempt to limit the application of the doctrine to children of a certain age, as not all children develop emotionally and intellectually on the same timetable, and we decline to do so.

*Id.*

Thus, the motive or purpose of the parent or guardian in recording the conversation is an important factor in determining whether a parent or guardian can vicariously consent for his or her minor child. In fact, in *Pollock* the court was unable to grant summary judgment because it found "there [were] questions of material fact as to [the parent's] motivation in taping the conversations." *Id.* at 612.

Further, the minor child's age, although not dispositive, is also an important factor in considering whether a parent or guardian can vicariously consent for the minor child. Here, A.T. was thirteen years old

when the conversations were recorded. Although A.T. was not a young child, her ability to consent to the recording is not mutually exclusive to Thompson's ability to vicariously consent. *See id.* at 608 (noting the federal district court's statement that " 'we are not inclined to view [the child's] own ability to actually consent as mutually exclusive with her mother's ability to vicariously consent on her behalf' ").

Some commentators charge that the *Pollock* test fails to adequately address a minor's right to privacy. *See* Daniel R. Dinger, *Should Parents be Allowed to Record a Child's Telephone Conversations when they Believe the Child is in Danger?: An Examination of the Federal Wiretap Statute and the Doctrine of Vicarious Consent in the Context of a Criminal Prosecution*, 28 Seattle U. L. Rev. 955, 992 (2005) (discussing critics' concerns about a minor's right to privacy under the vicarious consent doctrine). However, even though minors have a right to privacy, that right must be considered in the context of society's concern for children. *Bellotti v. Baird*, 443 U.S. 622, 635-39, 99 S. Ct. 3035, 3043-46, 61 L. Ed. 2d 797, 808-11 (1979). Society's concern for minors may be constitutionally reflected in our statutes to account for: (1) minors' peculiar vulnerabilities and their need for concern, sympathy, and paternal attention; (2) minors' inability to make sound judgments about their own conduct; and (3) our deference to the guiding role of parents. *Id.*; *City of Panora v. Simmons*, 445 N.W.2d 363, 368 (1989).

The Supreme Court and this court have held it is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49, 56 (2000); *Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001). Further, parents have a duty to protect their children because

children "often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." *Bellotti*, 443 U.S. at 635, 99 S. Ct. at 3044, 61 L. Ed. 2d at 808. Thus, in the context of section 808B.2(2)(*c*), we conclude a minor child's right to privacy is not violated when a parent or guardian vicariously consents for that minor consistent with the protections provided by the *Pollock* test.

State courts have also examined the vicarious consent doctrine as applied to either the federal interception of communications act or its state's own act. Like the federal courts, many states that have applied the vicarious consent doctrine have done so in the context of custody battles, one parent recording the conversation of the child and the other parent. *See Silas v. Silas*, 680 So. 2d 368, 371 (Ala. Civ. App. 1996) (applying the vicarious consent doctrine to the state interception of communications act where one parent recorded a conversation between the minor child and the other parent); *Smith v. Smith,* 923 So. 2d 732, 740 (La. Ct. App. 2005); (same); *Cacciarelli v. Boniface*, 737 A.2d 1170, 1176 (N.J. Super. Ct. Ch. Div. 1999); (same); *Kroh v. Kroh*, 567 S.E.2d 760, 764 (N.C. Ct. App. 2002) (same). However, some state courts have examined the vicarious consent doctrine in a criminal case with facts similar to those presented here.

In *State v. Diaz,* a babysitter was indicted for second-degree aggravated assault and second-degree endangering the welfare of a child after the parents secretly videotaped the babysitter abusing their infant-child. 706 A.2d 264, 265 (N.J. Super. Ct. App. Div. 1998). After finding the federal interception of communications act consent exception to be virtually identical to the consent exception within the New Jersey statute, the New Jersey Superior Court adopted the *Pollock* test and allowed recorded

statements of the babysitter and the infant-child's verbal reaction into evidence. *Id.* at 269-70.

Nevertheless, not all state courts have adopted the vicarious consent doctrine. In *State v. Christensen*, the Washington Supreme Court declined to adopt the vicarious consent doctrine where a mother listened to a conversation between her daughter and her daughter's boyfriend in which a crime was discussed. 102 P.3d 789, 796 (Wash. 2004). However, *Christensen* is distinguishable from the present case because, unlike the Iowa and federal statutes, which only require one party to consent to the recording, Washington's statute requires all parties to the conversation to consent to the recording. Wash. Rev. Code § 9.73.030. Further, the Washington Supreme Court found its statute extends considerably greater protections to its citizens than do comparable federal statutes and rulings and its "statute, unlike similar statutes in thirty-eight other states, tips the balance in favor of individual privacy." *Id.* at 795-96.

The Michigan Court of Appeals applied the *Pollock* test to the federal interception of communications act, but declined to apply the *Pollock* test to its statute in a case involving a father recording conversations between his minor child and the child's mother. *Williams v. Williams*, 603 N.W.2d 114, 116 (Mich. Ct. App. 1999) (per curium). However, *Williams* is distinguishable from our case because Michigan law requires the consent of both parties when a third party records a conversation. *Sullivan v. Gray*, 324 N.W.2d 58, 60-61 (Mich. Ct. App. 1982).

The West Virginia Supreme Court of Appeals declined to adopt the vicarious consent doctrine under its statute, which only requires one party to consent, when it held a father did not have the authority to consent on behalf of his children to the interception of conversations between his

children and their mother. *W. Va. Dep't of Health & Human Res. ex rel. Wright v. David L.*, 453 S.E.2d 646, 648 (W. Va. 1994). However, the facts of *David L.* are distinguishable from the present case. There, the father, who claimed to have given vicarious consent, had the recording device placed in the mother's home, rather than in his own home. *Id.* In a later case, the West Virginia court had the opportunity to revisit vicarious consent. In that case, the court refused to adopt the vicarious consent doctrine finding there was no statutory basis to do so. *State v. Williams*, 599 S.E.2d 624, 630 (W. Va. 2004). However, in that case the court allowed the tape recording into evidence, finding the minor herself consented to the recording. *Id.*

After considering (1) the weight of authority behind the adoption of the vicarious consent doctrine; (2) the similarity between the Iowa statute, the federal statute, and the statutes of those states adopting vicarious consent; (3) the protections against parental abuse provided by the doctrine; (4) our conclusion a minor's right to privacy is not violated when a parent or guardian vicariously consents for that minor consistent with the protections provided by the doctrine; and (5) the refusal of the Iowa legislature to allow a minor to consent to certain acts, especially with respect to those matters traditionally left to a parent or guardian to determine the best interests of the child, we interpret section 808B.2(2)(*c*) to include the vicarious consent doctrine as outlined in *Pollock*. In interpreting section 808B.2(2)(*c*) to include the vicarious consent doctrine, we find no basis to believe the Iowa legislature intended to subject parents and guardians to criminal and civil penalties when, out of concern for the best interests of their minor child, they record that child's conversations.

Therefore, as long as Thompson can show a good faith, objectively reasonable basis for believing that it was necessary and in the best interests

of A.T. to consent to the taping on her behalf, Thompson may vicariously consent on behalf of A.T. to record the conversations between A.T. and Spencer. Consequently, we reverse the decision of the district court suppressing Thompson's recordings of conversations between A.T. and Spencer. We remand the case to the district court to determine the admissibility of the recordings under the vicarious consent doctrine.

## V. Disposition.

Because we hold section 808B.2(2)(*c*)'s consent exception includes the vicarious consent doctrine, we reverse the district court's ruling on the motion to suppress and remand the case for the district court to determine the admissibility of the recordings under the vicarious consent doctrine as outlined in *Pollock.*

**REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**