IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 8, 2010 Session

## CHRIS LAWRENCE v. LEIGH ANN LAWRENCE

**Appeal from the Circuit Court for Knox County**
**No. 1-297-08     Dale C. Workman, Judge**

**No. E2010-00395–COA-R3-CV - FILED NOVEMBER 29, 2010**

Leigh Ann Lawrence ("Mother") secretly tape recorded her 2 1/2-year-old daughter's telephone conversation with the child's father, Chris Lawrence ("Father"), during the course of a divorce and custody dispute. After the divorce was concluded, Father filed a complaint against Mother seeking damages for, among other things, wiretapping in violation of Tenn. Code Ann. §39-13-601 (2006). Father filed a motion for partial summary judgment which the trial court denied upon finding that "[n]o set of facts would create liability under §39-13-601 et seq. for [Mother's] interception of [Father's] communication with his daughter." The court then entered partial summary judgment in favor of Mother and certified the judgment as final. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

W. Andrew Fox, Knoxville, Tennessee, for the appellant, Chris Lawrence.

R. Deno Cole, Knoxville, Tennessee, for the appellee, Leigh Ann Lawrence.

**OPINION**

I.

The parties agree that the following facts are undisputed:

> [Mother] secretly recorded a phone conversation between
> [Father] and his daughter.

[Mother's] recording actions were intentional.

[Mother's] recording was made without [Father's] knowledge or consent.

[Mother] was not a party to the conversation between [Father] and his daughter that [Mother] recorded.

[Mother] recorded the conversation sometime in late May or early June of 2007.

The parties' child was approximately 2 1/2 years old at the time of the recording, and had no capacity to provide consent to the recording of the conversation between the child and [Father].

Regardless of whether the parties' child had the capacity to provide consent, the child had no knowledge of the recording device, and to make the recording, [Mother] stationed herself at a phone other than the phone being used by the parties' daughter to speak with [Father], to not alert the child to the fact that [Mother] has holding a tape recorder, because the child would have wanted to sing into the tape recorder or play with it.

[Mother] disclosed the recording to a third party, a psychologist . . . who was conducting a custody evaluation in connection with the parties' divorce.

The parties were going through a divorce proceeding in 2007.

The above facts are taken verbatim from Father's "[Tenn. R. Civ. P.] 56.03 Statement of Material Facts." Mother filed her own statement of facts which the parties have addressed in the following stipulation filed in this Court:

[Father] filed a Motion for Partial Summary Judgment on May 29, 2009.

[Mother] waived the 30-day provision under TRCP 56, to allow [Father's] motion to be heard on June 26, 2009.

The trial court entertained [Father's] motion on June 26, 2009.

The trial court made its pronouncement relating to [Father's] motion on June 26, 2009.

[Mother] filed her Motion for Partial Summary Judgment on June 29, 2009.

The trial court has never entertained a hearing on [Mother's] motion; however the parties stipulated, pursuant to the Order entered February 1, 2010 . . . , that [Mother's] Motion for Partial Summary Judgment should be granted, in light of the trial court's findings that [Father's] invasion of privacy claim was non-justiciable.

[Mother] stated "Additional Material Facts" in her June 22, 2009 response to [Father's] . . . Statement of Material Facts, in order to raise the defense of the vicarious consent doctrine and create a question of fact as to whether she had a good faith, objectively reasonable basis for believing it was necessary and in the best interests of the parties' minor child to consent on behalf of her to the taping of a conversation with [Father] and the minor child.

The parties stipulate that these Additional Material Fact statements sworn to by [Mother], as part of [Mother's] Motion for Partial Summary Judgment, were not operative in the granting of [Mother's] Motion for Partial Summary Judgment.

The parties stipulate that if the court construes the law in such a way that the Additional Material Fact statements sworn to by [Mother] would become operative, then the case should be returned to the trial court to allow [Father] an opportunity to demonstrate that a genuine issue of material fact exists with respect to these statements.

The trial court stated its reasons for granting partial summary judgment in favor of Mother as follows:

The Tennessee wiretapping act found at §39-13-601 et seq. does not abrogate a parent's constitutionally protected common law right and duty to protect the welfare of his or her child. This act

is overbroad in its application to the set of circumstances involving parents and their children's telephone conversations. Therefore, this court finds that a parent has an unrestricted right to vicariously consent to the interception and recording of any phone conversation between a child and any other person, including another parent.

The parties agree that the Court's ruling renders Count 1 of [Father's] Complaint non-justiciable. No set of facts would create liability under § 39-13-601 et seq. for [Mother's] interception of [Father's] communication with his daughter. Therefore [Mother's] Motion for Partial Summary Judgment, filed on June 29, 2009, should be granted.

(Paragraph numbering omitted.) As we have stated, the trial court certified the judgment as final pursuant to Tenn. R. Civ. P. 54.02.[1]

## II.

Father has appealed. The single issue he raises is

[w]hether the Trial Court . . . erred by denying summary judgment to [Father] and granting summary judgment to [Mother], when he found that no set of facts would create liability under the Tennessee wiretapping statute, TCA § 39-13-601 et seq., for [Mother's] actions of eavesdropping and taping

---

[1]The pertinent text of Rule 54.02 is as follows:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

From statements in the briefs, it appears that the other counts in the complaint were non-suited. However, we have not found an order of dismissal in the record nor do we see an order of dismissal listed in the docket sheet that is part of the record. Therefore, we rely on the order of certification to provide finality to the judgment.

-4-

[Father's] phone conversation with their 2 1/2-year-old daughter.

III.

We are called upon to construe the term "consent" as it is used in Tenn. Code Ann. § 39-13-601 to determine whether Mother had an "unrestricted right to vicariously consent" to the interception of her daughter's telephone conversation. Issues of statutory construction are issues of law, which we review *de novo* without a presumption of correctness as to the trial court' construction. **Leab v. S & H Mining Co.**, 76 S.W.3d 344, 348 (Tenn.2002). A trial court's determination that no set of facts can be proven which will afford relief is equivalent to dismissal for failure to state a claim and is also reviewed *de novo*. **Trau-Med of America, Inc. v. Allstate Ins. Co.**, 71 S.W.3d 691, 696 -697 (Tenn. 2002).

IV.

Before we look at the exact statutory language at issue, it will be helpful to have some context for the language we will be examining; Tenn. Code Ann. § 39-13-601 identifies prohibited conduct, § 602 sets forth the criminal penalty for the prohibited conduct, and § 603 provides a private right of action to "any aggrieved person whose wire, oral or electronic communication is intentionally intercepted, disclosed or used in violation of § 39-13-601 . . ." The pertinent part of § 39-13-601 reads as follows:

> (a)(1) Except as otherwise specifically provided in §§ 39-13-601 – 39-13-603 . . . a person commits an offense who:
>
> (A) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> \* \* \*
>
> (C) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection (a);
>
> \* \* \*

(2) A violation of subdivision (a)(1) shall be punished as provided in § 39-13-602 and shall be subject to suit as provided in § 39-13-603.

(b) . . . .

* * *

(5) *It is lawful* under §§ 39-13-601 – 39-13-603 and title 40, chapter 6, part 3 *for a person* not acting under color of law *to intercept a wire, oral, or electronic communication*, where the person is a party to the communication or *where one of the parties to the communication has given prior consent to the interception*, unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the state of Tennessee.

* * *

(Emphasis added.) The word "consent" is not defined in Tenn. Code Ann. § 39-13-601.

The parties agree that this is an issue of first impression in Tennessee. The lack of a definition and the obvious inability of a 2 1/2-year-old child to consent to a phone call or the recording of same convinces us that the statute is ambiguous and therefore subject to interpretation. *See* ***State v. Spencer***, 737 N.W.2d 124, 129 (Iowa 2007)("Iowa's legislative policy ordinarily requires a parent's or guardian's input. With this in mind, we find . . . the word "consent" as used in [Iowa's wiretapping statute] is ambiguous when applied to minors."). We have a duty to construe the term in such a way to avoid any constitutional conflict if it is susceptible to such a construction. ***Jordan v. Knox County***, 213 S.W.3d 751, 780 (Tenn. 2007).

The parties agree that parents have a fundamental constitutional right to make decisions concerning the care, custody and control of their children. *See* ***Hawk v. Hawk***, 855 S.W.2d 573, 577-79 (Tenn. 1993). In fact, the right of a parent to make decisions for a child without state interference is bounded only by "the state's authority as *parens patriae* . . . to prevent serious harm to a child." ***Id***. at 580. The Tennessee Supreme Court has held that

> [t]he relations which exist between parent and child are sacred ones. . . . The right to the society of the child exists in its

-6-

> parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents.
>
> . . .

*Hawk*,  855 S.W.2d at 578 (*quoting In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917)).  A parent has a right to "childrearing autonomy" unless and until a showing is made of "a substantial danger of harm to the child."  *Id*. at 579.

It is readily apparent to us that "childrearing autonomy" encompasses control of a 2 1/2-year-old child's access to the telephone, including to whom the child speaks and when the child speaks and under what conditions the child speaks.  We are also inclined to agree with the trial court that as to a 2 1/2-year-old, this right is "unrestricted."  We are not, by this opinion, painting a bright line as to age.  *See Cardwell v. Bechtol*, 724 S.W.2d 739, 744-45 (Tenn. 1987)(recognizing "varying degrees of maturity" and that normally a child under age seven has no capacity to consent).  Since 2 1/2 is obviously an age at which a child is too young to give consent, we see no need to determine a bright line rule in this case.

It is true, as Father argues, that divorce proceedings necessarily interject the government into the realm of "the parents' constitutionally protected fundamental liberty interest in the care and custody of their children."  *Tuetken v. Tuetken*, 320 S.W.3d 262, 272 (Tenn. 2010)(*quoting Lee v. Lee*, 66 S.W.3d 837, 847 (Ten. Ct. App.  2001)).  Father therefore argues that the parental bill of rights codified at Tenn. Code Ann. § 36-6-101(a)(3) (Supp. 2009) reflects a policy decision by the legislature that limits Mother's rights to make decisions for the child.  Father relies specifically on the "right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations."  *Id*.  We note that the divorce court retains the ability to deny the listed rights "when the court finds it not to be in the best interests of the affected child."  *Id*.

We believe Father focuses on the wrong question.  The question is not whether the court with divorce jurisdiction can allocate rights between litigating parents.  Clearly it can.  It can enforce its decrees in any number of ways, including contempt and sanctions.  *See Hannahan v. Hannahan*, 247 S.W.3d 625, 628 (Tenn. Ct. App. 2007)("Husband was obligated to comply with the terms of the April 5, 2006 order which he signed, and we find no error in the trial court's decree holding him in contempt for his failure to do so."); *see also* Tenn. R. Civ. P. 69.

The pertinent question in this case is whether the legislature intended to subject a parent to criminal penalties and money damages for eavesdropping, from another telephone, on a 2 1/2-year-old child's telephone conversation without the child's knowledge.  For the

reasons we have already identified, we do not believe the legislature intended to invade the parent-child relationship. Further, we do not believe that the legislature intended to impose criminal penalties and money damages with respect to a telephone conversation between a parent and a 2 1/2-year-old child during the pendency of a divorce proceeding. Accordingly, we hold that, as a matter of law, Mother had the right to consent, as that term is used in Tenn. Code Ann. § 39-13-601, vicariously to intercepting, recording and disclosing the child's conversation with Father.

Our holding is in accord with the *result* produced under a variety of tests in other jurisdictions. The leading case under the federal wiretapping statute is ***Pollock v. Pollock***, 154 F.3d 601 (6th Cir. 1998). In ***Pollock***, a mother recorded her 14-year-old daughter's conversation with her stepmother. *Id*. at 604. The court recognized that several other federal circuits had held that parental wiretapping without the consent of a minor child did not violate the federal law because it was done from an extension phone as part of "the ordinary course of business" of raising children. *Id*. at 607. The Sixth Circuit could not follow that same path because it had, in another case, rejected the proposition that recording from an extension phone was part of the "ordinary course of business." *Id*. Instead, the court held that "as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording." *Id*. at 610. The court adopted the objective test because of concern that a parent might abuse the doctrine of vicarious consent by falsely claiming to act in the best interest of the child. Also, the court rejected the idea of "limit[ing] the application of the doctrine to children of a certain age," but recognized the greatest need for vicarious consent is "in the case of children who are very young." *Id*.

A recent state case that took a broad look at the law in various jurisdictions and allowed parental recording of a child's conversation is ***Spencer***, 737 N.W.2d 124. ***Spencer*** involved the criminal prosecution of a teacher for sexual exploitation of his 13-year-old female student. Part of the evidence against him was a tape recording the student's father had made without the child's knowledge. The case came before Iowa's Supreme Court on appeal from the criminal court's suppression of the evidence as a violation of Iowa's wiretapping law. *Id*. at 126. The Supreme Court, after surveying the cases from other jurisdictions, reversed the suppression and held that the father had the ability to vicariously consent for the child. *Id*. at 132.

Although the ***Spencer*** Court imposed some restrictions on the ability to vicariously consent that we have not imposed by our holding, its analysis is consistent with our result in several important respects. First, it recognized that "[s]ociety's concern for minors may be constitutionally reflected in . . . statutes to account for: (1) minors' peculiar vulnerabilities

and their need for concern, sympathy, and paternal attention; (2) minors' inability to make sound judgments about their own conduct; and (3) our deference to the guiding role of parents." *Id*. at 132. We agree. Second, it recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id*. We have articulated that same right under the Tennessee Constitution. Third, it recognized that "the minor's age . . . is also an important factor in considering whether a parent or guardian can vicariously consent for the minor child." *Id*. at 131. We believe that in the case of a 2 1/2-year-old, the right to vicariously consent exists as a matter of law.

V.

To the extent that non-Tennessee cases cited by us go beyond our holding in this case, we do not find it necessary to state our approval or disapproval of those portions of the other jurisdictions' holdings that go beyond our own.

VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Chris Lawrence. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE