OPINION OF THE COURT
Fahey, J.
We hold that the definition of consent, in the context of “mechanical overhearing of a conversation” pursuant to Penal Law § 250.00 (2), includes vicarious consent, on behalf of a minor child.
Our decision sets out a narrowly tailored test for vicarious consent that requires a court to determine (1) that a parent or guardian had a good faith belief that the recording of a *427 conversation to which the child was a party was necessary to serve the best interests of the child and (2) that there was an objectively reasonable basis for this belief.
I.
In 2008, defendant lived with his girlfriend and her five-year-old son on the second floor of a two-family house. The owners lived on the main floor. Through her ceiling, the landlady on several occasions heard defendant screaming at the child, and the child crying and pleading. When the landlady told defendant that it was not acceptable to “beat on children,” he responded by saying, “I can beat the hell out of him if I want if he lies.” This conversation was not reported to any authority.
The boy’s father had visitation rights, and in the spring of 2008 he noticed that when it was time for his son to return home after a visit, the child would start crying and refuse to get ready. On May 4, 2008, after a conversation with his son, the father told the mother he would not return the child to her. She contacted the police, who appeared at the father’s home and required that he release the child to the mother’s custody.
On May 6, 2008, the father tried to reach the mother on her cell phone, using his own cell phone. He called several times without reaching her; the calls went directly to voicemail. Finally, a call went through, but no one said anything to the father. However, the line was open, and the father was able to hear what was occurring in defendant’s apartment. Defendant and the child’s mother were yelling at the child, who was crying. Defendant threatened to beat him and punch him in the face. The father, using another cell phone, tried to call the landline telephone in the apartment, but no one answered.
At this point, the father decided to record what he was hearing using a voice memo function on his cell phone. On the recording, which was played to the jury at defendant’s trial, defendant told the five-year-old boy that he was going to hit him 14 times for lying and that this would hurt more than a previous beating. The father saved the recording on his cell phone. He did not contact the police.
On October 22, 2008, defendant’s landlady heard screaming and crying in the apartment above her. The child (now six years old) was begging “Anthony” to stop hurting him. She also heard a slapping sound. On October 31, 2008, the landlady *428 again heard the child screaming for “Anthony” to stop hurting him, and she and her daughter heard what sounded like a strap being used to beat someone. At his wife’s insistence, the landlord called the police.
Police officers rang the doorbell of the upstairs apartment, knocked on the door, and called the landline telephone. No one answered. The police broke the door down and arrested defendant and the child’s mother. The child was treated at a medical center; he had extensive bruising and swelling on the lower part of his body, including older bruises that were 7 to 10 days old. The child told an emergency room doctor that his mother had hit him, with a belt, as punishment for lying. At the precinct, the mother gave the police consent to retrieve two belts from the apartment.
From November 1, the child lived with his father. The father informed the police of the recording he had saved on his cell phone, and the police preserved it on a compact disc.
II.
Defendant was charged with four counts of assault in the second degree, two counts of criminal possession of a weapon in the fourth degree, and one count of endangering the welfare of a child. In pretrial proceedings, the People sought, over defendant’s objection, permission to introduce the father’s recording into evidence at trial. Defendant protested that the making of the recording amounted to eavesdropping, prohibited by Penal Law § 250.05, and that the recording was therefore inadmissible pursuant to CPLR 4506 (1). The People also put the defense on notice that they would be seeking a charge instructing the jury that defendant had “a duty to care for the child and to prevent harm from happening to [him],” and would be arguing that defendant had violated such a duty. Defendant objected that this would change the theory of the case from what had been presented in the indictment.
The trial court allowed the recording to be admitted into evidence, with respect to the endangering the welfare of a child count, holding that the father’s action was not eavesdropping, and that, even if it were, it was justifiable on the basis of the “duty of the father to take some action once he heard [defendant’s] conduct.” The court relied on People v Clark (19 Misc 3d 6 [App Term, 2d Dept, 2d & 11th Jud Dists 2008], lv denied 10 NY3d 861 [2008]), in which the Appellate Term permitted the admission of a recording based on a theory of vicarious consent.
*429 At trial in June 2009, the jury heard testimony from the child (see CPL 60.20), the father, the owners of the two-family house, the emergency room doctor, the child’s first-grade teacher, and detectives. The child’s testimony regarding the events of October 31 was that his mother and defendant took turns beating him with a belt. The landlady recounted how she had heard the child begging “Anthony” to stop hurting him.
The May 6, 2008 recording was played for the jury, with the instruction that the jury could consider it only as evidence concerning the endangering the welfare of a child count. The father testified concerning the circumstances leading to the recording. Asked whether he had been afraid for his son’s safety when he was listening to what was occurring in the apartment, he responded that he had not thought that defendant would physically harm his son, but was afraid for the boy to the extent that defendant’s “tone was getting louder and louder.” The jury also saw photographs of the child’s injuries, and the belts were introduced into evidence.
Defendant testified. He told the jury that he had never struck the child and asserted that the child’s mother had carried out the beatings. Defendant insisted that his recorded threats addressed to the child were idle and intended to prevent the child’s mother from hitting him. With regard to the events of October 31, defendant testified that the child’s mother had spanked the child on her own, that he had not heard the beating or, later, the arrival of the police because he had headphones on, and that his involvement in the incident had been limited to consoling the child and treating his wounds.
Before summations, the prosecution formally requested an accessorial liability charge. Defendant objected that such a charge “reframe [d] the indictment,” altering “the nature and theory of the prosecution’s case.” The trial court, however, instructed the jury that
“there are . . . circumstances where an individual’s criminal liability may be predicated on that individual’s failure to act or an omission to act provided that the individual shared the same state of mind as the actor. . . .
“[I]n order for you to hold this defendant criminally liable under this definition of accessorial liability, meaning the omission-to-act theory of liability, you must find that the People prove beyond a reason *430 able doubt that the defendant failed to act or omitted to perform an act that he was legally required to perform because of his parental or parental equivalent relationship with the victim, and that he did so with the state of mind required for the commission of the offense.”
The jury found defendant guilty of all charges, except one assault charge that corresponded to the beating alleged to have occurred on October 22. Upon conviction, the trial court sentenced defendant to an aggregate term of seven years’ imprisonment, to be followed by three years’ postrelease supervision.
On appeal, defendant argued, as pertinent here, that the recording amounted to eavesdropping in violation of Penal Law § 250.05, because no party to the conversation consented to the recording, so that the evidence was inadmissible under CPLR 4506, and that the charge on accessorial liability was given in error.
The Appellate Division affirmed the trial court’s judgment (124 AD3d 672 [2d Dept 2015]). The Court adopted the vicarious consent doctrine, as recognized with respect to the federal wiretap statute by the Sixth Circuit in Pollock v Pollock (154 F3d 601 [6th Cir 1998]), and in New York by the Appellate Term in People v Clark.
“While . . . Penal Law § 250.05 serves the strong public policy goal of protecting citizens from eavesdropping, we are not persuaded that the New York Legislature intended to subject parents to criminal penalties when, out of concern for the best interests of their minor child, they record that child’s conversations. Given the similarity between the federal wiretap statute and New York’s eavesdropping statute, and recognizing that the vicarious consent exemption is rooted on a parent’s need to act in the best interests of his or her child, we deem it appropriate to adopt it as an exemption to Penal Law § 250.05.
“Here, the People sufficiently demonstrated that the father had a good faith, objectively reasonable basis to believe that it was necessary for the welfare of the infant to record the conversation, such that he could consent to the recording on the *431 infant’s behalf. Accordingly, the vicarious consent exemption applies, and admission of the subject recording was not barred by CPLR 4506.” (124 AD3d at 674 [internal quotation marks and citations omitted].)
With respect to the jury charge, the Appellate Division held that “under no rational view of the evidence could the jury have convicted the defendant based upon any uncharged theory,” so that “the error concerning the charge was harmless” (id. at 675 [internal quotation marks omitted]).
A Judge of this Court granted defendant leave to appeal (25 NY3d 949 [2015]). We now affirm.
III.
Generally, in New York,
“[t]he contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct constituting the crime of eavesdropping, as defined by section 250.05 of the penal law, may not be received in evidence in any trial, hearing or proceeding before any court or grand jury” (CPLR 4506 [1]).
Penal Law § 250.05, in turn, provides that “[a] person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication.” Eavesdropping is a class E felony.
Wiretapping is defined as “the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment” (Penal Law § 250.00 [1]). “ ‘Mechanical overhearing of a conversation’ means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment” (Penal Law § 250.00 [2]).[1]
The father’s actions on his cell phone did not constitute “wiretapping” because, with respect to the telephonic com *432 munication he recorded, he was “a sender or receiver thereof” (Penal Law § 250.00 [1]). Defendant argues, however, that the father’s actions amounted to the crime of “mechanical overhearing of a conversation” (Penal Law §§ 250.05, 250.00 [2]), and that the recording was consequently inadmissible. Defendant points out that the father deliberately used a device to record a conversation between defendant, the child, and his mother, without obtaining the consent of any of those three people, and without being present at, or a party to, the conversation. We agree that the father’s actions matched the statutory elements. Certainly, mechanical overhearing of a conversation or “bugging” has been interpreted to include the interception of face-to-face communications by means of a recording device on a telephone (see People v Basilicato, 64 NY2d 103, 114 [1984] [holding that a recording was a mechanical overhearing of a conversation when a device designed for authorized wiretapping enabled tape recording of a face-to-face conversation because the receiver was left off the hook]; see also People v Basilicato, 98 AD2d 124, 126 [3d Dept 1983] [noting that the recording device was installed “in the telephone itself”]). This, however, does not end our analysis.
The analytical core of this case is consent. The father did not ask for or obtain the consent of any party to the conversation. Nor is there evidence in the record that the mother intentionally manipulated her cell phone so that the father’s call would go through. We conclude, however, that the father gave consent to the recording on behalf of his child.
The principle of vicarious consent that we adopt originates in federal case law. The federal wiretapping law, like the New York statutes we interpret here, contains an exception for the interception of a communication with the consent of one party.
“It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State” (18 USC § 2511 [2] [d] [emphasis added]).
In Thompson v Dulaney (838 F Supp 1535 [D Utah 1993]), in the context of a custody hearing, the United States District *433 Court for the District of Utah held that the parent or guardian of minor children can give vicarious consent, on behalf of the children, to the recording of conversations to which the children are a party, on the ground that
“as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children” {id. at 1544).
The children in Thompson were three and five years old; the conversations were with their father.
In 1998, the Sixth Circuit adopted the rationale of Thompson in an influential decision, Pollock v Pollock (154 F3d 601 [6th Cir 1998], reh en banc denied 1998 US App LEXIS 29672 [6th Cir 1998], reh denied 1998 US App LEXIS 29673 [6th Cir 1998]). In Pollock, during a custody dispute, a mother placed a device on a telephone in her home in order to record her 14-year-old daughter’s conversations with her stepmother. The Sixth Circuit, emphasizing the elements of parental good faith and best interests of the child, held that “as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording” (Pollock, 154 F3d at 610).[2]
*434 The Sixth Circuit noted that the vicarious consent “doctrine should not be interpreted as permitting parents to tape any conversation involving their child simply by invoking the magic words: T was doing it in his/her best interest,’ ” but insisted that “there are situations, such as verbal, emotional, or sexual abuse by the other parent, that make such a doctrine necessary to protect the child from harm” (Pollock, 154 F3d at 610). The Pollock court considered the motive or purpose of the guardian or parent in recording the conversation to be a significant factor in determining whether he or she could consent on behalf of his or her minor child. Notably, in Pollock, the Sixth Circuit reversed the lower court’s grant of summary judgment to the mother and remanded, because it found that “questions of material fact” existed regarding the mother’s “motivation in taping the conversations” (Pollock, 154 F3d at 612).
In New York, the Appellate Term adopted Pollock’s vicarious consent doctrine in People v Clark (19 Misc 3d 6 [2008]). In that case, the mother of an eight-year-old boy with autism, who had noticed that her son was coming home from school with bruises, placed a recording device in her son’s backpack, and recorded evidence of a “conversation” at which the boy was present, inculpating his personal bus matron. The bus matron moved to suppress the recording on the ground that it had been recorded without her consent or the consent of any other party present, in violation of Penal Law § 250.05. The Appellate Term adopted Pollock and held that the mother consented to the recording on behalf of her child, “since she demonstrated a good faith, objectively reasonable basis to believe that it was necessary for the welfare of her son to make said recording” (Clark, 19 Misc 3d at 9). The Appellate Term “stress[ed] that [its] decision . . . should not be interpreted as holding that a minor alone can never provide the requisite consent to record a conversation at which he or she may be present or as permitting parents to tape any conversation involving their child” (Clark, 19 Misc 3d at 9-10).[3]
This Court agrees with the approach taken by the Sixth Circuit in Pollock, and by the Appellate Term in Clark, as ap *435 plied below. There is no basis in legislative history or precedent for concluding that the New York Legislature intended to subject a parent or guardian to criminal penalties for the act of recording his or her minor child’s conversation out of a genuine concern for the child’s best interests. By contrast, the vicarious consent doctrine recognizes the long-established principle that the law protects the right of a parent or guardian to take actions he or she considers to be in his or her child’s best interests. Yet it also recognizes important constraints on that right, by requiring that the parent or guardian believe in good faith that it is necessary for the best interests of the child to make the recording, and that this belief be objectively reasonable.
Defendant contends that Pollock is distinguishable because in that case the parent “recorded her child while that child was at her home,” whereas here the father recorded conversations involving the child and his mother in the mother’s home. We conclude, however, that the location of the child is inapposite, so long as the child was lawfully present at the location of the conversation. The interests of a child who is being assaulted or abused are served by having events recorded, for use by police and prosecutors, whether the crimes occur in the home of the person making the recording or somewhere else.
In light of the persuasive precedent from other jurisdictions and the reasoning set out above, we hold that if a parent or guardian has a good faith, objectively reasonable basis to believe that it is necessary, in order to serve the best interests of his or her minor[4] child, to create an audio or video recording of a conversation to which the child is a party, the parent or guardian may vicariously consent on behalf of the child to the recording.
IV.
Some criticisms of the vicarious consent doctrine have emerged in the legal literature; it has been suggested
“that the doctrine (1) is subject to misuse and abuse by scheming parents; (2) allows for an invasion of the child’s privacy; (3) fails to recognize the child’s right to make his or her own choices; and (4) will result in interfamily discord and resentment when *436 a child finds out that his or her parents have been secretly recording private telephone conversations” (Daniel R. Dinger, Should Parents Be Allowed to Record a Child’s Telephone Conversations When They Believe the Child Is in Danger?: An Examination of the Federal Wiretap Statute and the Doctrine of Vicarious Consent in the Context of a Criminal Prosecution, 28 Seattle U L Rev 955, 989 [2005] [summarizing criticisms before concluding that the doctrine is viable]).
We believe that the objections, which are echoed by the dissent, are misplaced. Our discussion begins with the first criticism.
In Pollock, while the mother insisted that she had acted out of concern for her daughter’s best interests, the father claimed that her real motive was retaliation for previous instances of similar recording by him, together with a desire to hear her daughter’s conversations with her lawyer. The Sixth Circuit, as we noted, remanded. A parent or guardian who is acting in bad faith or is merely curious about his or her child’s conversations cannot give lawful vicarious consent to their recording. If it is not objectively reasonable to believe that a recording is necessary to serve the child’s best interests, then the recording may constitute the crime of eavesdropping as defined in Penal Law § 250.05. For these reasons, the vicarious consent doctrine, properly applied, does not lend itself to misuse and abuse by scheming parents.
The second criticism may be summarized as the concern that “parents who surreptitiously intercept telephone conversations will become privy to anything discussed in those conversations . . . [and] may learn more about the child than just what problems the child is experiencing or what dangerous situations the child might be in, thus going beyond the scope or intent of the vicarious consent doctrine” (Dinger at 992). We accept that the doctrine may have such consequences for a child’s privacy, but we believe the benefits of serving a child’s best interests by necessary means outweigh the detriment. We also note that a trial court that admits such a recording into evidence can and should consider all objections to the relevance of portions of the recording. It should, where possible, do so before a recording is played to the jury, so that parts that have no relevance do not become public by inclusion in a trial. In our view, the careful application of the vicarious consent *437 doctrine by trial courts with a view to the exclusion of ir-revelant evidence will address the second criticism.
The third criticism is in a sense fundamental, but it lacks merit. The concern relates to the autonomy of the child. “Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination . . . They are subject, even as to their physical freedom, to the control of their parents or guardians” (Vernonia School Dist. 47J v Acton, 515 US 646, 654 [1995]). The reason is clear. “[T]he States validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences . . . [because] during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them” (Bellotti v Baird, 443 US 622, 635 [1979], reh denied 444 US 887 [1979]). Nevertheless, we do not discount the fact that a child’s autonomy grows with age. In deciding whether a parent or guardian had a good faith belief that a recording was necessary to serve the best interests of the child and that this belief was objectively reasonable, courts must consider the age and maturity of the child. A significant factor in assessing whether a parent or guardian believed in good faith that it was necessary to make a recording without a child’s express consent, in order to serve the child’s best interests, is whether the child is capable of formulating well-reasoned judgments, of his or her own, regarding best interests. The same is true of the separate assessment of whether the parent’s or guardian’s belief is reasonable. In general, the older the child, the more this consideration will be an important factor in determining parental good faith and reasonableness.
Finally, the fourth concern, like the second, reflects a side effect of the doctrine that is justified by its goal of serving a child’s best interests. It may be alleviated by an effort on the part of the trial court to ensure that private conversations are admissible only insofar as relevant.
V.
Applying the vicarious consent doctrine to the present case, the record supports the conclusion of the courts below that the People have sufficiently demonstrated that the father had a good faith, objectively reasonable basis to believe that it was necessary for the welfare of his son to record the violent *438 conversation he found himself listening to. The father testified that he was concerned for his son’s safety because of the volume and tone of defendant’s threats. Although other portions of the father’s testimony reveal that he may have been in doubt about whether physical harm would ensue, it does not follow that he had no good faith reason to believe that it was necessary to record the conversation. Furthermore, the evidence that the child had previously expressed fear of returning home adds support to the conclusion that the father had a good faith basis, despite his delay in providing the recording to the police. While defendant argues that the father should have contacted the police earlier, his failure to report what he had heard immediately does not diminish the evidence of good faith.
Moreover, the father’s basis is objectively reasonable. The father had heard defendant and the child’s mother yelling at the five-year-old child, and defendant threatening to beat him. Furthermore, he could not get through to the apartment on the landline phone. It was reasonable for the father to conclude that making the recording was necessary to serve the child’s best interests. Additionally, the recording, which captures a five-year-old crying while defendant is threatening to hit him 14 times and referring to previous beatings, speaks volumes. The contents of the recording demonstrate that there was an objectively reasonable basis for the father to believe that recording what he was hearing was necessary to serve his son’s best interests.
VI
Our holding should not be interpreted as a vehicle to attempt to avoid criminal liability for the crime of eavesdropping when a parent acts in bad faith and lacks an objectively reasonable belief that a recording is necessary in order to serve the best interests of his or her minor child. Penal Law § 250.05 and CPLR 4506 cannot be so easily circumvented. To be sure, the procedural vehicles of pretrial hearings in CPLR 4506 and CPL 710.70 must be used to determine the admissibility of any recordings and will result in the suppression of any parent’s recording that a court determines did not meet our narrowly tailored and objective test. In making this admissibility determination, a court should consider the relevant factors already discussed, which include, but are not limited to, the parent’s motive or purpose for making the recording, the necessity of the recording to serve the child’s best interests, and the *439 child’s age, maturity, and ability to formulate well-reasoned judgments of his or her own regarding best interests.
VII.
With respect to defendant’s challenge to the jury charge on accessorial liability, the People now concede that the trial court improperly instructed the jury on a theory of criminal liability not alleged in the indictment, namely the uncharged theory that defendant committed assault by failing to protect the child from an assault by his mother. However, the People correctly observe that a “variance between the [t]rial [j]udge’s charge to the jury, on the one hand, and the allegations of an indictment, on the other, may be considered harmless where there is no possibility that the jury premised its determination of guilt upon a theory not contained in the indictment” (People v Udzinski, 146 AD2d 245, 261 [1989], lv denied 74 NY2d 853 [1989]). The principle emerges from People v Grega (72 NY2d 489 [1988]), where this Court held that a defendant was not deprived of the right to be tried only for crimes with which the grand jury had charged him, because there was no “evidence from which the trial jury could have concluded that defendant accomplished his crimes” in the manner described by an uncharged theory of criminal liability and “the jury’s guilty verdict could only have been based on the evidence of [the crime] as charged in the indictment” {id. at 496). Notably, a reviewing court may not apply such a harmless error analysis to an improper jury charge if “it is impossible ... to determine whether the guilty verdict was founded on an illegal theory,” for that would, “in effect, assume the jury’s fact-finding function by concluding that the jury must have reached its result on some alternative legal ground” (People v Martinez, 83 NY2d 26, 35 [1993], cert denied 511 US 1137 [1994]).
Here, the trial court’s jury charge error is harmless. There is no possibility that the jury based its verdict with respect to the assault charges on the uncharged theory that defendant stood by and failed to assist the child, while his mother assaulted him, yet at the samé time the defendant possessed the state of mind required for the commission of assault. To have concluded that defendant stood by and did nothing while the child’s mother beat him, the jury would have had to discredit the testimony of the child that his mother and defendant took turns beating him and the testimony of the landlady that she heard the child addressing “Anthony” and *440 entreating him to stop hurting-him, and instead credit defendant’s own testimony that he had never spanked or beaten the child. However, to the extent defendant’s testimony suggested that he did nothing while the child’s mother spanked him, his testimony also told the jury that he did nothing because he was unaware of the beating until after it occurred. That would have been inconsistent with sharing the state of mind required for assault. As the People point out, “[n] either side presented any evidence of a ‘middle ground,’ where defendant did not participate in or assist, but was aware of and failed to prevent, the [October 31] beating, and did so while sharing [the mother]’s intent to assault.”
VIII.
Defendant challenges the prosecutor’s opening statement, but his contentions are unpreserved. Defendant’s remaining arguments lack merit.
Accordingly, the order of the Appellate Division should be affirmed.

. “Intercepting or accessing of an electronic communication” is defined to exclude transfer of “any telephonic or telegraphic communication” (Penal Law § 250.00 [5] [a]; see Penal Law § 250.00 [6]).

. Subsequently, the Pollock doctrine has been adopted by state courts throughout the United States, including high courts interpreting state statutes (see Griffin v Griffin, 92 A3d 1144, 1150-1153, 2014 ME 70, ¶¶ 21-32 [2014]; Commonwealth v F.W., 465 Mass 1, 6-14, 986 NE2d 868, 871-877 [2013]; State v Whitner, 399 SC 547, 552-556, 732 SE2d 861, 863-865 [2012]; State v Spencer, 737 NW2d 124, 130-134 [Iowa 2007]; Alameda v State, 235 SW3d 218, 222-223 [Tex Crim App 2007]). Massachusetts has extended the doctrine “to allow a nonparent, and specifically, the adult half-sister of the victim, to vicariously consent to the oral communications of her half-sister” (F.W., 465 Mass at 11, 986 NE2d at 875).
State high courts declined to adopt a vicarious consent doctrine in State v Christensen (153 Wash 2d 186, 193-194, 102 P3d 789, 792 [2004] [interpreting state statute with ail-party consent, as opposed to one-party consent, requirement]) and, before Pollock was decided, in West Virginia Dept. of Health & Human Resources ex rel. Wright v David L. (192 W Va 663, 670-671, 453 SE2d 646, 653-654 [1994]; see also State v Williams, 215 W Va 201, *434 207, 599 SE2d 624, 630 [2004] [rejecting defendant’s argument that a custodial parent of a minor child must give consent on the child’s behalf to the interception of a communication between that child and a third party]).

. One Justice dissented on the ground that “nothing in the statutory language or legislative history makes any provision for such consent” (Clark, 19 Misc 3d at 11 [Weston Patterson, J.P., dissenting]).

. A minor is “a person under the age of eighteen years” (Domestic Relations Law § 2).