# IN THE SUPREME COURT OF IOWA

No. 77 / 07–0468

Filed September 5, 2008

**HOLSTEIN ELECTRIC and INTEGRITY MUTUAL INSURANCE COMPANY,**

Appellants,

vs.

**JAY BREYFOGLE,**

Appellee.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

An employer and its insurance carrier appeal from the district court's ruling affirming an adverse decision of the workers' compensation commissioner. **AFFIRMED**.

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

Steven D. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellee.

**WIGGINS**, **Justice**.

In this appeal we hold an injury to the wrist is to be compensated as an injury to the arm under Iowa Code section 85.34(2)(*m*) (2003). Additionally, because substantial evidence supports the commissioner's decision, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Holstein Electric employed Jay Breyfogle as an electrician from 1998 until 2004. His employment required heavy lifting, running power tools, swinging sledgehammers, and various other manual tasks. On July 16, 2002, as Breyfogle grabbed some conduit, he heard his wrist pop. Shortly after he heard the noise, his wrist swelled. A physician diagnosed Breyfogle with Kienbock's disease, which is avascular necrosis of the carpal lunate. The carpal lunate is a bone located in the wrist.

Breyfogle was referred to a hand specialist, Dr. Tiedeman. Breyfogle had seen Dr. Tiedeman on three separate occasions at the time of his compensation hearing. During the first visit Dr. Tiedeman agreed with the prior diagnosis of Kienbock's disease after taking x-rays of Breyfogle's wrist. During that visit Breyfogle reported he had intermittent discomfort in his wrist, particularly with activity, and he wore a brace at work and periodically at night. Dr. Tiedeman explained several treatment options, one being surgery, but noted surgery was only a salvage procedure and that Breyfogle's wrist would never be normal or fully functional again. Dr. Tiedeman released Breyfogle to work without restrictions.

On Breyfogle's second visit to Dr. Tiedeman, Breyfogle reported he was still experiencing occasional discomfort in his wrist with activity, and he still wore the splint intermittently. Repeat x-rays of Breyfogle's wrist were taken and did not show any further progression or change from his

February x-rays. Dr. Tiedeman again opined Breyfogle's symptoms did not warrant surgical intervention at that time because surgery would not produce a normal wrist. Dr. Tiedeman allowed Breyfogle to return to work without restrictions but advised him to avoid heavy lifting, forceful use, and the extremes of motion.

Breyfogle returned to Dr. Tiedeman for a third visit in September 2003. Breyfogle reported his symptoms remained unchanged and he had occasional discomfort in his wrist with more vigorous use. Dr. Tiedeman took range-of-motion measurements and opined Breyfogle's condition was unchanged and fairly stable, but that the damage to his wrist was irreversible. Dr. Tiedeman opined Breyfogle had reached maximum medical improvement. He further opined Breyfogle suffered a nineteen percent impairment to his right wrist based on the *AMA Guides to the Evaluation of Permanent Impairment* and due to the residual loss of motion in his wrist as well as the loss of carpal height and strength. Dr. Tiedeman recommended continued conservative treatment.

Breyfogle saw Dr. Herrera, a neurologist, in November at the request of his employer. Breyfogle reported he was about fifty percent improved and had been stable for the previous six months. On a pain scale of zero to ten, Breyfogle indicated his wrist pain would vary from a zero to a ten and that when he had severe pain it would go away in three to four minutes. Dr. Herrera performed range-of-motion tests and opined Breyfogle suffered eight percent impairment to his right upper extremity. He broke that down into a one percent impairment of the upper extremity, three percent for wrist flexion, one percent for ulnar deviation, and three percent for radial deviation. Dr. Herrera also based his opinion on the *AMA Guides*.

Next Breyfogle saw Dr. O'Neil, an orthopedic surgeon, in June 2004. Dr. O'Neil agreed with the impairment rating Dr. Tiedeman assigned. In his testimony, Dr. O'Neil admitted he did not know how Dr. Tiedeman arrived at his opinion, but that even if the *AMA Guides* did not provide a nineteen percent impairment rating, the rating was reasonable based on Breyfogle's stage four Kienbock's disease.

Because section 85.34(2) does not specify whether a wrist injury should be compensated as a scheduled injury to the arm or hand, the workers' compensation deputy commissioner concluded Breyfogle's wrist injury should be compensated as an injury to the arm. The deputy gave more weight to Dr. Tiedeman's testimony. The deputy went on to conclude Breyfogle suffered a nineteen percent impairment to his right arm.

The employer and its insurance carrier appealed to the commissioner. The commissioner agreed that an injury to the wrist should be compensated as an injury to the arm. The commissioner also upheld the impairment rating.

The employer and its insurance carrier filed a petition for judicial review. The district court made a legal conclusion that an injury to the wrist should be compensated as an arm injury, not a hand injury. The district court also upheld the agency's impairment rating.

The employer and insurance carrier appeal.

**II. Issues.**

The employer and the insurance carrier raise two issues on appeal: first, whether an injury to the wrist should be compensated as an injury to the hand under section 85.34(2)(*l*) or as an injury to the arm under section 85.34(2)(*m*) and second, whether substantial evidence supports the commissioner's finding of impairment.

### III.  Scope of Review.

The standard upon which we review a decision of the commissioner is governed by section 17A.19(10).  It is well settled that " '[t]he interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.' " *Lakeside Casino v. Blue,* 743 N.W.2d 169, 173 (Iowa 2007) (citation omitted).  Accordingly, we will not give the commissioner's interpretation of the law deference and are free to substitute our own judgment.  *Id.*; *see also* Iowa Code § 17A.19(10)(*c*).

As to the agency's factual determinations, we determine whether the findings are based on "substantial evidence in the record before the court when that record is viewed as a whole."  Iowa Code § 17A.19(10)(*f*).  Substantial evidence is defined as

> [T]he quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1).  Factual determinations in workers' compensation cases are " 'clearly vested by a provision of law in the discretion of the agency,' " and so is the application of the law to those facts.  *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 465 (Iowa 2004) (citation omitted).  By applying the "substantial evidence" standard to the agency's fact finding, we are giving the agency appropriate discretion.  *Id.*  When reviewing an agency's application of the law to the facts, we reverse only when the agency's application is "irrational, illogical, or wholly unjustifiable."  *Id.*  This standard of review affords appropriate deference to the agency.  *Id.*

**IV. Whether a Wrist Injury is Compensated as an Injury to the Hand or to the Arm.**

The scheduled injuries contained in the Code applicable to this appeal are as follows:

> *l.* For the loss of a hand, weekly compensation during one hundred ninety weeks.
>
> *m.* The loss of two-thirds of that part of an arm between the shoulder joint and the elbow joint shall equal the loss of an arm and the compensation therefor shall be weekly compensation during two hundred fifty weeks.

Iowa Code § 85.34(2)(*l*), (*m*). The Code is silent as to whether a wrist is part of the hand or the arm for purposes of a scheduled injury. Therefore, we must determine whether the Code compensates a wrist injury as an injury to the hand or an injury to the arm. This requires us to construe sections 85.34(2)(*l*) and 85.34(2)(*m*).

We must determine whether the language of the statute is ambiguous before engaging in statutory construction. *State v. Spencer*, 737 N.W.2d 124, 129 (Iowa 2007). If reasonable persons could disagree on a statute's meaning, it is ambiguous. *Id.* " 'Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined.' " *Id.* (quoting *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001)). Under the statutory scheme of section 85.34(2), reasonable persons could disagree as to whether the legislature considered a wrist injury as an injury to the hand or to the arm.

We look to the intent of the legislature to resolve this ambiguity. *See State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). In interpreting a statute, we look for "an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results." *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006).

The legislature enacted the workers' compensation statute primarily for the benefit of the worker and the worker's dependents. *Cedar Rapids Cmty. Sch. v. Cady*, 278 N.W.2d 298, 299 (Iowa 1979). Therefore, we apply the statute broadly and liberally in keeping with the humanitarian objective of the statute. *Id.* We will not defeat the statute's beneficent purpose by reading something into it that is not there, or by a narrow and strained construction. *Id.*

The wrist is the joint located between the hand and the arm. The distal point of the wrist is the point between the wrist bones and the hand bones. The proximal point of the wrist is the point between the wrist bones and the arm bones. In the past when faced with analogous situations, this court has looked to the proximal point of the joint to classify an injury under the workers' compensation statutes. *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 839–40 (Iowa 1986) (holding an injury to the hip joint is compensated as an injury to the body as a whole); *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 269–70 (Iowa 1995) (holding an injury to the shoulder joint is compensated as an injury to the body as a whole). One rationale for reaching this conclusion is that the workers' compensation statute is to be construed in favor of the worker. *Lauhoff Grain Co.*, 395 N.W.2d at 839. By choosing the proximal point of a joint to classify an injury, the worker's impairment rating is applied to a higher number of maximum weeks of compensation than if we classify the injury using the distal point of the joint.

To be consistent with our prior cases, we look at the proximal side of the wrist joint and hold an injury to the wrist is to be compensated as an injury to the arm. By construing an injury to the wrist as an injury to the arm, a worker's compensation is based on a 250-week maximum,

rather than a 190-week maximum for an injury to the hand. *Compare* Iowa Code § 85.34(2)(*m*), *with id.* § 85.34(2)(*l*). This construction of the statute is consistent with our prior decisions finding the legislative intent behind the workers' compensation statute is to apply this law broadly and liberally in favor of a worker when an ambiguity exists. Accordingly, as a matter of law a wrist injury is compensated as an injury to the arm under section 85.34(2)(*m*).

**V. Whether Substantial Evidence Supports the Commissioner's Finding of Impairment.**

The employer and its insurance carrier claim the commissioner should have rendered an award to Breyfogle consistent with Dr. Herrera's rating rather than the ratings of doctors Tiedeman and O'Neil. As the trier of the facts, it is the commissioner's duty to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 395 (Iowa 2007). Doctors Tiedeman and O'Neil rated Breyfogle's injury as a nineteen percent impairment, a rating well within the range of impairment contained in the *Guides*. Although the commissioner could have chosen to adopt Dr. Herrera's opinion, the commissioner decided the ratings by doctors Tiedeman and O'Neil were entitled to the greater weight of the evidence. Therefore, substantial evidence supported the commissioner's decision.

**VI. Disposition.**

Having found that an injury to the wrist should be compensated as an injury to the arm under section 85.34(2)(*m*) and that substantial evidence supports the commissioner's rating, we affirm the judgment of the district court.

**AFFIRMED**.