# IN THE SUPREME COURT OF IOWA

No. 21–0777

Submitted February 23, 2022—Filed April 1, 2022

**ROSA CHAVEZ,**

Appellant,

vs.

**MS TECHNOLOGY LLC** and **WESTFIELD INSURANCE COMPANY,**

Appellees.

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

A workers' compensation claimant challenges the commissioner's treatment of her rotator cuff injury as a scheduled shoulder injury rather than an unscheduled whole body injury under Iowa Code section 85.34(2). **AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all participating justices joined. Mansfield and McDermott, JJ., took no part in the consideration or decision of the case.

Erin M. Tucker (argued) of Tucker Law Office, Des Moines, for appellant.

Lori N. Scardina Utsinger (argued) of Betty, Neuman & McMahon, P.L.C., Davenport, for appellee.

Jay M. Smith of Smith & McElwain Law Office, Sioux City, for amicus curiae Iowa Federation of Labor, AFL-CIO.

Andrew W. Bribriesco, Bettendorf, for amicus curiae League of United Latin American Citizens of Iowa.

Jason D. Neifert of Neifert, Byrne & Ozga, P.C., West Des Moines, for amicus curiae Workers' Compensation Core Group of the Iowa Association for Justice.

**CHRISTENSEN, Chief Justice.**

This case presents our first opportunity to interpret the legislature's 2017 amendment to Iowa Code section 85.34(2), which added "shoulder" to the list of scheduled member injuries for determining the award amount for permanent partial disability in a workers' compensation proceeding. *See* Iowa Code § 85.34(2)(*n*) (2018). In the course of her employment, the claimant sustained a "full thickness rotator cuff tear that has retracted to the level of the glenoid, severe AC arthrosis, tendonitis and tearing of the biceps tendon." She sought permanent partial disability benefits for this injury, arguing her rotator cuff injury qualified as an unscheduled injury to the body as a whole, thereby entitling her to industrial disability benefits, instead of a scheduled injury to the shoulder.

The workers' compensation commissioner disagreed, concluding the claimant's rotator cuff injury was a scheduled shoulder injury under Iowa Code section 85.34(2)(*n*), and the district court affirmed on judicial review. We retained the claimant's appeal. For the reasons explained below, we affirm the district court decision that claimant's rotator cuff injury is a scheduled shoulder injury under section 85.34(2)(*n*). We also affirm the district court decision that substantial evidence supports the commissioner's finding that Chavez failed to prove her biceps tear resulted in a permanent disability to her arm under section 85.34(2)(*m*).

**I. Background Facts and Proceedings.**

On February 5, 2018, Rosa Chavez sustained a work injury in the course of her employment as a lab technician at MS Technology, LLC. Chavez performed a variety of tasks in this position, including mopping. At the time of her injury, Chavez was wringing out a mop by pushing it down in a mop bucket when she heard a pop and felt immediate pain in her right shoulder. She sought treatment for the pain on February 8, and her medical provider referred her to Dr. Todd Peterson, an orthopedic surgeon, for further evaluation.

Dr. Peterson evaluated Chavez on April 12, and Chavez reported experiencing pain on both the anterior and posterior aspect of her right shoulder and pain radiating down her right arm. Dr. Peterson ordered an MRI, which revealed "a large full thickness tear of the rotator cuff with retraction to around the level of the glenoid," "[s]evere AC arthrosis," "[b]iceps tendonitis and tearing," "mild supraspinatus atrophy," and "acromial spurring." Her primary injury was a rotator cuff tear. Consequently, Dr. Peterson recommended Chavez undergo "shoulder arthroscopy with rotator cuff repair, biceps tenotomy, subacromial decompression, and distal claviculectomy." He also modified Chavez's work restrictions to include no overhead work or lifting over ten pounds. Chavez underwent the following procedures on July 11: "[r]ight shoulder arthroscopy with arthroscopic repair of the rotator cuff tendon of the supraspinatus, infraspinatus, and subscapularis tendons; extensive debridement of the labrum, biceps tendon, and subacromial space with biceps tenotomy, subacromial depression."

On November 8, Dr. Peterson placed Chavez on maximum medical improvement, allowing her to continue working with no restrictions. He also concluded Chavez had a six percent partial permanent impairment to her right upper extremity. Chavez obtained an independent medical evaluation from Dr. Sunil Bansal on May 13, 2019. Dr. Bansal opined that Chavez "incurred an acute injury of her right shoulder" that "result[ed] in an acute injury to the labrum, rotator cuff and attached muscles." Dr. Bansal agreed with Dr. Peterson's identification of November 8, 2018, as the date of maximum medical improvement and placed Chavez at a ten percent upper extremity impairment, which he stated is equal to a six percent impairment of the body as a whole.

Chavez filed a petition for arbitration before the Workers' Compensation Commission on September 28, 2018, seeking workers' compensation benefits for injuries to her "right shoulder, neck and right upper extremity." The case went to hearing on October 1, 2019, where the parties primarily disputed whether Chavez's injury resulted in an unscheduled industrial disability or a scheduled member injury to her shoulder in light of 2017 amendments to the Iowa Code that identify the "shoulder" as a scheduled member for workers' compensation purposes. At the time of the hearing, Chavez continued to work for MS Technology, LLC, without restrictions and had received a raise since her injury.

The deputy commissioner issued her arbitration decision on February 5, 2020, concluding Chavez incurred an unscheduled injury to the body as a whole.

Nevertheless, the deputy commissioner limited Chavez's recovery to a functional impairment rating because Chavez had returned to work for the same or greater pay. MS Technology, LLC, and its insurance carrier, Westfield Insurance Company, (hereinafter Appellees) appealed, and Chavez cross-appealed to the commissioner. On September 30, the commissioner issued a decision concluding Chavez's injury was compensable as a scheduled shoulder injury rather than an unscheduled whole body injury and applied Dr. Bansal's ten percent extremity impairment rating. Chavez petitioned for judicial review, and the district court issued a decision affirming the commissioner's appeal decision that Chavez's injury was compensable as a scheduled shoulder injury on April 29, 2021. Chavez filed a timely appeal, which we retained.

## II. Standard of Review.

The standards set forth in Iowa Code chapter 17A guide "our judicial review of agency decision-making to determine whether our conclusion is the same as the district court." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 242 (Iowa 2018). Further, "we review the commissioner's interpretation of Iowa Code chapter 85 for correction of errors at law instead of deferring to the agency's interpretation" because the legislature has not clearly vested the commissioner with authority to interpret that chapter. *Id.* Nevertheless, "[w]e accept the commissioner's factual findings when supported by substantial evidence." *Gumm v. Easter Seal Soc. of Iowa, Inc.*, 943 N.W.2d 23, 28 (Iowa 2020) (quoting *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018)).

**III. Analysis.**

Chavez argues the district court erred by finding her injury was a scheduled member injury to her shoulder rather than an unscheduled whole body injury under Iowa Code section 85.34(2). She also maintains that she is entitled to an industrial disability analysis if her injury is an unscheduled whole body injury. Alternatively, if we conclude that Chavez's injury constitutes a scheduled shoulder injury, Chavez claims she is entitled to an industrial disability analysis because she incurred simultaneous injuries to her shoulder and arm. We address these claims in turn as necessary.

**A. Defining Shoulder Injuries Under Chapter 85.** The dispositive issue in this case is the definition of "shoulder" under Iowa Code section 85.34(2)(*n*). Under section 85.34, the classification of a workers' compensation claimant's injury as either scheduled or unscheduled determines the extent of the claimant's entitlement to permanent partial disability benefits. *Floyd v. Quaker Oats,* 646 N.W.2d 105, 109 (Iowa 2002). Paragraphs (*a*) through (*u*) of section 85.34 govern permanent partial disability payments for injuries to specific members of the body and provide a schedule of benefits for injuries to those specific members. *Second Inj. Fund of Iowa v. Nelson,* 544 N.W.2d 258, 269 (Iowa 1995); *see also* Iowa Code § 85.34(2)(*a*)–(*u*). Disabilities resulting from injuries other than those listed in paragraphs (*a*) through (*u*) of section 85.34 are considered unscheduled injuries that allow for benefits based on the injury to the body as a whole and are evaluated according to the industrial method. *Second Inj. Fund of Iowa,* 544 N.W.2d at 269; *see also* Iowa Code § 85.34(2)(*v*).

If an injury is classified as a scheduled member injury to her shoulder under Iowa Code section 85.34(2)(*n*), the claimant is eligible for a percentage of 400 weeks of pay based on the impairment rating of the injury. In contrast, if an injury is classified as an unscheduled whole body injury under section 85.34(2)(*v*), the claimant is eligible for payment for the functional impairment resulting from the injury on a 500-week schedule and additional compensation if the claimant did not return to work earning the same or greater wages as before the injury. Thus, claimants typically receive greater compensation for unscheduled whole body injuries than they would for scheduled member injuries. In 2017, the legislature amended section 85.34(2) to add "shoulder" to the list of scheduled injuries and set the benefits schedule for "the loss of a shoulder" to "weekly compensation during four hundred weeks," but it did not define "shoulder." 2017 Iowa Acts ch. 23, § 7 (codified at Iowa Code § 85.34(2)(*n*) (2018)).

The parties now dispute whether Chavez's rotator cuff injury constitutes a scheduled member injury to her shoulder under section 85.34(2)(*n*) or an unscheduled whole body injury under section 85.34(2)(*v*). Chavez contends "shoulder," under section 85.34(2)(*n*), is narrowly defined to only include injuries located within the glenohumeral (shoulder) joint, which is "a ball-and-socket synovial joint between the head of the humerus and the glenoid cavity of the scapula." *Glenohumeral joint*, Stedmans Medical Dictionary 463600, Westlaw (database updated Nov. 2014). Under this definition, damage to the proximal side of the joint is considered an unscheduled whole body injury, damage to the

distal side of the joint is considered a scheduled arm injury, and damage within the glenohumeral joint is considered a scheduled shoulder injury. Appellees ask us to affirm the commissioner and district court rulings, which defined "shoulder," under section 85.34(2)(*n*), more broadly to include Chavez's injury by defining "shoulder" as the shoulder structure, including injuries to the tendons, ligaments, muscles, and articular surfaces connected to the glenohumeral joint.

Before we engage in any statutory construction, we must determine whether the statutory language is ambiguous. *Holstein Elec. v. Breyfogle*, 756 N.W.2d 812, 815 (Iowa 2008). A statute is ambiguous when reasonable persons could disagree as to its meaning. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016). Here, Iowa Code section 85.34(2)(*n*) is ambiguous because reasonable persons can—and do—disagree on the statutory meaning of "shoulder," as the deputy commissioner applied Chavez's proffered definition while the commissioner and district court applied Appellees' proffered definition. *See* 43 Am. Jur. Proof of Facts 3d 201, § 2 (1997) ("The 'shoulder' therefore may be defined in at least three different ways."). Consequently, we rely on our rules of statutory construction to guide our interpretation of "shoulder" under section 85.34(2)(*n*). *See Brewer-Strong*, 913 N.W.2d at 251.

Our goal in interpreting the statutory provisions contained in chapter 85 of the Iowa Code "is to determine and effectuate the legislature's intent." *Id.* at 249 (quoting *Ramirez-Trujillo*, 878 N.W.2d at 770). We do so "by looking at the legislature's language rather than speculating about what the legislature might

have said." *Id.* Further, "[w]e assess the statute in its entirety rather than isolated words or phrases to ensure our interpretation is harmonious with the statute as a whole." *Id.* (quoting *Ramirez-Trujillo*, 878 N.W.2d at 770). "[L]egislative intent is expressed by omission as well as by inclusion . . . ." *In re Guardianship of Radda*, 955 N.W.2d 203, 209 (Iowa 2021) (alteration in original) (quoting *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995)). Thus, when the legislature includes certain language in one section of a statute but omits it in another section of the same statute, we generally presume the omission is intentional. *Id.*

We also "look for 'an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results.' " *Holstein Elec.*, 756 N.W.2d at 815 (quoting *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006)). While Chavez "is correct that we interpret workers' compensation statutes in favor of the worker, we still must interpret the provisions within the workers' compensation statutory scheme 'to ensure our interpretation is harmonious with the statute as a whole.' " *Id.* at 253 (quoting *Ramirez-Trujillo*, 878 N.W.2d at 770). These rules of statutory construction guide our conclusion that "shoulder" under section 85.34(2)(*n*) must be defined in the functional sense to include the glenohumeral joint as well as all of the muscles, tendons, and ligaments that are essential for the shoulder to function.

Chavez's treating physician, Dr. Peterson, diagnosed her injury as a "full thickness rotator cuff tear that has retracted to the level of the glenoid, severe AC arthrosis, tendonitis and tearing of the biceps tendon." On appeal, Chavez concedes that "injuries like labral tears, glenoid tears, bicep tears and

glenohumeral joint instability" would be considered "shoulder" injuries under her proposed definition because they are injuries located within the glenohumeral joint. Her challenge is to the commissioner and district court rulings that her rotator cuff injury is a "shoulder" injury under section 85.34(2)(*n*), which she maintains is incorrect "because every rotator cuff muscle attaches proximally-to the glenohumeral joint."

A rotator cuff is "the anterior, superior, and posterior aspects of the capsule of the shoulder joint reinforced by the tendons of insertion of the supraspinatus, infraspinatus, teres minor, and subscapularis (SITS) muscles." *Rotator cuff of shoulder*, Stedmans Medical Dictionary 217890, Westlaw (database updated Nov. 2014). The rotator cuff muscles "stabilize the glenohumeral joint." *Id.*; *see also* 43 Am. Jur. Proof of Facts 3d 201, § 4. "When the complex of muscles and tendons which produce the joint's stability are damaged or not functioning correctly, conditions known as the 'unstable shoulder syndrome', 'rotator cuff disorder', or 'recurrent shoulder dislocations' occur." 43 Am. Jur. Proof of Facts 3d 201, § 3.

Viewing section 85.34(2) in its entirety, it is apparent that the legislature did not intend to limit the definition of "shoulder" solely to the glenohumeral joint. Notably, the legislature refers to the joints of certain body parts in other subsections, including the "shoulder joint," yet it chose not to include the term "joint" when adding "shoulder" to the list of scheduled injuries. *See In re Guardianship of Radda*, 955 N.W.2d at 209. *Compare* Iowa Code § 85.34(2)(*n*), *with id.* § 85.34(2)(*m*). If the legislature only wanted to encompass the

glenohumeral joint under section 85.34(2)(*n*), it could have expressly stated so as it did when referring to joints in other subsections. Yet, it chose to list "the loss of a shoulder" as a scheduled injury under section 85.34(2)(*n*) instead.

Moreover, we have previously explained that the "loss" referenced in section 85.34(2) includes the "loss of the use of a scheduled member." *Floyd*, 646 N.W.2d at 109. In other words, the loss of function. "The functional shoulder is . . . not confined to the single anatomical joint known as the 'shoulder' or glenohumeral joint, but is a system which in its entirety has the largest range of motion of any joint in the human body." 43 Am. Jur. Proof of Facts 3d 201, § 4. Simply put, the shoulder cannot function to its fullest extent without the muscles that comprise the rotator cuff.

Defining "shoulder" in the functional sense under section 85.34(2)(*n*) best achieves the statute's purpose. Likewise, this functional definition aligns with the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fifth Edition, (AMA Guides) which is the guide "for determining the extent of loss or percentage of impairment for permanent partial disabilities" under section 85.34(2) in Iowa. Iowa Admin. Code r. 876—2.4. The AMA Guides examine the shoulder's active range of motion to evaluate impairment, measuring functions like flexion, extension, internal and external rotation, abduction, and adduction. *See Cunningham v. Quad/Graphics, Inc.*, 522 S.W.3d 204, 205–07 (Ky. Ct. App. 2017) (explaining the evaluation process set forth in the AMA Guides to assess shoulder impairment). Consequently, it is impossible to evaluate shoulder impairment without some evaluation of the muscles,

tendons, etc. that make the shoulder function. Chavez's own medical records support this conclusion, as the record is replete with references to Chavez's injury as a "shoulder" issue.

For example, when Chavez first sought medical attention for the pain she was experiencing from the mop incident, the medical notes documented, "[Chavez] returns to office with continued complaints regarding her right *shoulder*. She states that she feels like she injured her *shoulder* once again over the weekend."[1] (Emphasis added.) When she subsequently met with the orthopedic surgeon, she "present[ed] with complaints of right *shoulder* pain that started on 2/5/18 while mopping at work." (Emphasis added.) She obtained a "Right *Shoulder* MRI" that led to the diagnosis of her "full thickness rotator cuff tear that has retracted to the level of the glenoid, severe AC arthrosis, tendonitis and tearing of the biceps tendon." (Emphasis added.) The surgical procedure she received was "[r]ight *shoulder* arthroscopy with arthroscopic repair of the rotator cuff tendon of the supraspinatus, infraspinatus, and subscapularis tendons; extensive debridement of the labrum, biceps tendon, and subacromial space with biceps tenotomy, subacromial depression." (Emphasis added.)

Moreover, Dr. Bansal, who conducted Chavez's independent medical evaluation, described Chavez's injury as "an acute on chronic injury of her right *shoulder*." (Emphasis added.) He explained,

> The *shoulder* is a ball and socket joint. However, the socket is very shallow, making it quite susceptible to injury. The *shoulder* itself

---

[1] Chavez sought medical treatment for shoulder pain a few weeks before the injury at issue due to a slip and fall on ice.

> has a relatively immobile scapula and clavicle and a mobile humeral head interface at the shoulder joint. Consequently, the humeral head may move suddenly in relation to the rest of the *shoulder* joint, especially from the forceful wringing of the mop, requiring her *shoulder* to be in an abducted and rotated position, resulting in an acute injury to the labrum, rotator cuff, and attached muscles.

(Emphasis added.) In summary, Chavez's medical records show that the physicians who treated or assessed Chavez's injury considered it to be a shoulder injury.

Chavez cites prior Iowa caselaw that looked to "the proximal point of the joint to classify an injury under the workers' compensation statutes" to treat "shoulder" injuries as unscheduled whole body injuries, but that caselaw developed before the legislature amended the statutory scheme to add shoulder injuries to the list of scheduled member injuries under section 85.34(2). *Holstein Elec.*, 756 N.W.2d at 816; *see Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 839–40 (Iowa 1986) (en banc); *Second Inj. Fund*, 544 N.W.2d at 269–70. Those cases only discussed the dividing line between the arm and the body as a whole because "shoulder" was not a scheduled injury at the time. *See, e.g.*, *Alm v. Morris Barick Cattle Co.*, 38 N.W.2d 161, 163 (Iowa 1949). It was inconsequential whether the injury was technically to the shoulder—all that mattered was whether the injury was to the scheduled member arm or extended beyond it. "Our rules of statutory construction hold that when the legislature amends a statute, a presumption exists that the legislature intended to change the law." *Colwell v. Iowa Dep't of Hum. Servs.*, 923 N.W.2d 225, 235 (Iowa 2019). Thus, the pre-2017 amendment caselaw that Chavez cites is unpersuasive.

Finally, Chavez's remaining arguments for defining the "shoulder" only to include the glenohumeral joint because it favors workers and reduces the need for litigation determining whether a claimant's injury is a "shoulder" under section 85.34(2)(*n*) largely boil down to policy considerations that are best left for the legislature to consider. More litigation may be needed in the short term to develop the exact parameters of a scheduled shoulder injury under section 85.34(2)(*n*), but that does not warrant ignoring our rules of statutory construction to interpret "shoulder" to be limited to the "shoulder joint." In any event, Chavez acknowledged during oral argument that treating injuries like hers as whole body injuries would still require litigation in almost every case to determine the disability rating for compensation purposes. This negates her claim that her proffered definition is preferable because it favors the worker by reducing the need for litigation.

Ultimately, "[d]octors have been drawing these lines for years, deciding whether an injury is a whole body injury or a scheduled injury under the Act," and "[t]here is no reason doctors cannot continue to do so under this new amendment." *Injured Workers of Kan. v. Franklin*, 942 P.2d 591, 608 (Kan. 1997) (rejecting challenges to an amendment that added shoulders to the list of scheduled injuries for workers' compensation purposes). For these reasons, "shoulder" is not limited to the glenohumeral joint. Chavez does not alternatively argue that her particular injury should be considered anything other than an unscheduled whole body injury, such as an arm. As we described above, it is clear from Chavez's medical records that her rotator cuff injury is a "shoulder"

injury. Therefore, we affirm the commissioner and district court rulings that Chavez suffered a scheduled injury to her shoulder under section 85.34(2)(*n*).

**B. Whether Chavez is Entitled to Industrial Disability Benefits.** Chavez maintains that should we conclude her shoulder injury is a scheduled injury, she is entitled to industrial disability benefits because she injured two scheduled members: her right shoulder and right arm. Section 85.34(2)(*t*) provides:

> The loss of both arms, or both hands, or both feet, or both legs, or both eyes, or any two thereof, caused by a single accident, shall equal five hundred weeks and shall be compensated as such; however, if said employee is permanently and totally disabled the employee may be entitled to benefits under subsection 3.

Iowa Code § 85.34(2)(*t*). Chavez acknowledges this section does not apply because it does not mention shoulder injuries, so she argues instead that an injury to her right arm and right shoulder falls under the catch-all provision in section 85.34(2)(*v*). The relevant language in this section provides:

> In all cases of permanent partial disability other than those described or referred to in paragraphs "a" through "u", the compensation shall be paid during the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred.

*Id.* § 85.34(2)(*v*).

We need not address this statutory interpretation argument because substantial evidence supports the commissioner's finding that Chavez "failed to carry her burden to prove her biceps tear results in any permanent disability to her arm." *See Gumm*, 943 N.W.2d at 28 ("[W]e accept the commissioner's factual findings when supported by substantial evidence." (alteration in original) (quoting *Bluml*, 920 N.W.2d at 84)). As the injured employee, Chavez had the

burden to prove by a preponderance of the evidence that she sustained a permanent partial disability to her arm under section 85.34(2)(*m*). *See Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 254 (Iowa 2010). Dr. Peterson diagnosed Chavez with "[b]iceps tendonitis and tearing," and Chavez underwent a biceps tenotomy as part of her surgery. However, nothing in the record indicates Chavez suffered a permanent impairment to her right arm apart from the shoulder injury.

As the district court aptly summarized in affirming the commissioner's determination that Chavez did not prove a permanent partial disability to her arm under section 85.34(2)(*m*),

> Chavez did not present a separate permanent impairment rating for her arm from either Dr. Peterson or her expert Dr. Bansal. Dr. Bansal's report is expressly limited to Chavez's right shoulder: "This examination should focus on her right shoulder." Dr. Bansal's physical examination noted a 40% loss of abduction and 20% flexion strength loss in Chavez's right shoulder as compared to the left shoulder. The only assessment that seems to reference the arms is "upper extremity reflexes," which notes the same result for right and left of +2.

(Citations omitted.) Accordingly, substantial evidence supports the commissioner's finding that Chavez failed to meet her burden to prove her biceps tear resulted in a permanent disability to her arm under section 85.34(2)(*m*).

**IV. Conclusion.**

For the aforementioned reasons, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Mansfield and McDermott, JJ., who take no part.